**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| RFCYBER CORP., | Case No. 2:20-cv-00274-JRG |
| *Plaintiff*, | JURY TRIAL DEMANDED |
| v. | **FILED UNDER SEAL** |
| GOOGLE LLC and GOOGLE PAYMENT CORP., | |
| *Defendants*. | |

**DEFENDANTS' MOTION TO TRANSFER OR,
IN THE ALTERNATIVE, TO DISMISS FOR IMPROPER VENUE**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................1

II.    STATEMENT OF ISSUES TO BE DECIDED ........................................2

III.   FACTUAL BACKGROUND ...................................................................2

    A.    The Location of the Relevant Witnesses and Evidence ......................2

        1.    Google and GPC's Relevant Employees and Documentary Evidence Are in the Northern District of California...................2

        2.    Plaintiff's Directors, Officers, and Documentary Evidence Are in the Northern District of California..............................3

        3.    Nearly All Relevant Third Parties, Including the Inventors, Are in the Northern District of California................................3

    B.    Plaintiff's Venue-Related Allegations with Respect to GPC and Google ..............5

IV.   LEGAL STANDARD..............................................................................6

    A.    Law Governing Motion to Transfer....................................................6

    B.    Law Governing Motion to Dismiss.....................................................7

V.    MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA .........7

    A.    Plaintiff's Alleged Ties to this District Carry No Weight. .....................8

    B.    The Private Interest Factors Favor Transfer. .......................................9

        1.    The Convenience of the Witnesses Favors Transfer....................9

        2.    The Availability of Compulsory Process Favors Transfer. .......12

        3.    Ease of Access to Relevant Sources of Proof Favors Transfer.................12

        4.    Practical Considerations Weigh in Favor of Transfer................13

    C.    The Public Interest Factors Favor Transfer. ......................................14

        1.    The Northern District of California's Interests Favor Transfer. ...............14

        2.    The Time to Resolution Is Neutral............................................15

        3.    The Remaining Public Interest Factors Are Neutral..................15

    D.    The Balance of the Private and Public Interest Factors Favors Transfer..............16

VI.   MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE ...........................16

    A.    Plaintiff Has Failed to Demonstrate that GPC Has a Place Of Business Within this District...............................17

    B.    Plaintiff Has Failed to Demonstrate that Google Has a Place of Business Within this District...............................19

1.  Google Does Not Offer Google Fi from any Physical Place of Business in this District. ...................................................................19

2.  █████████████████████████████████ and, Even If It Had Not, Google Did Not Offer the Service from a Physical Place of Business...................20

4.  Google Does Not Offer Interconnect Services from any Location in this District, And Google Does Not Own, Operate, Or Control the Equipment Identified by Plaintiff. .......................................21

5.  Google's Receipt of Services from CTDI Does Not Establish a Regular and Established Place of Business of Google in this District...........................................................................................21

    (a)  CTDI Is Not Google's Agent Because It Does Not Have Authority to Alter Google's Legal Relations with Third Persons. ....................................................................22

    (b)  CTDI Is Not Google's Agent Because Google Does Not Exercise Interim Control over CTDI's Operations.......................24

    (c)  CTDI Performs Only Ancillary Services for Google and Does Not Conduct Google's Business..........................................28

6.  Plaintiff's Remaining Allegations Do Not Satisfy the Patent Venue Statute. ...................................................................................29

C.  Alternatively, The Court Should Transfer this Case to the Northern District of California Under 28 U.S.C. § 1406. ...................................................30

VII.  CONCLUSION.................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010)......................................................................14

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) ..........................................................9, 12

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
  2018 WL 2329752 (E.D. Tex. May 23, 2018) ..................................................9

*AGIS Software Dev., LLC v. ZTE Corp.*,
  2018 WL 4854023 (E.D. Tex. Sept. 28, 2018) ................................................17

*Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*,
  512 F. Supp. 2d 1039 (S.D. Tex. 2007) ..........................................................8, 9

*Andra Grp., LP v. Victoria's Secret Stores, LLC*,
  2020 WL 1465894 (E.D. Tex. Mar. 26, 2020) .................................................18

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020).......................................................................7

*In re Apple, Inc.*,
  581 F. App'x 886 (Fed. Cir. 2014) ..................................................................12

*Arguello v. Conoco, Inc.*,
  207 F.3d 803 (5th Cir. 2000) ....................................................................24, 28

*ATEN Int'l Co. v. Emine Tech. Co.*,
  261 F.R.D. 112 (E.D. Tex. 2009)....................................................................15

*Camreta v. Greene*,
  563 U.S. 692 (2011)........................................................................................22

*Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*,
  745 F.3d 703 (4th Cir. 2014) ..........................................................................24

*CNE Direct, Inc. v. Blackberry Corp.*,
  821 F.3d 146 (1st Cir. 2016) ...........................................................................23

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017)............................................................. 1, passim

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Deep Green Wireless LLC v. Ooma, Inc.*
2017 WL 679643 (E.D. Tex. Feb. 21, 2017) .......................................................................12

*In re EMC Corp.*,
501 F. App'x 973 (Fed. Cir. 2013) ...................................................................................14

*EMED Techs. Corp. v. Repro-Med Sys., Inc.*,
2018 WL 2544564 (E.D. Tex. June 4, 2018) ....................................................................18

*ES Distribution, LLC, v. Hangtime LLC*,
2020 WL 6689755 (D.N.J. Nov. 13, 2020) .......................................................................28

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)......................................................................6, 9, 12, 15

*In re Google LLC*,
823 F. App'x 982 (Fed. Cir. 2020) ...................................................................................22

*In re Google*,
2017 WL 977038 (Fed. Cir. 2017)..............................................................................14, 15

*In re Google*,
949 F.3d 1338 (Fed. Cir. 2020)...................................................................... 17, passim

*Hoffman v. Blaski*,
363 U.S. 335 (1960)..........................................................................................7, 14

*In re Hoffmann–LaRoche*,
587 F.3d 1333 (Fed. Cir. 2009).........................................................................8, 15

*In re HP Inc.*,
826 F. App'x 899 (Fed. Cir. 2020) ...................................................................................14

*Kranos IP Corp. v. Riddell, Inc.*,
2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) .................................................................17

*Largan Precision Co. v. Ability Opto-Elecs. Tech. Co.*,
2020 WL 3078042 (E.D. Tex. June 10, 2020)...................................................................15

*Lowery v. Estelle*,
533 F.2d 265 (5th Cir. 1976) ...........................................................................................30

*Lynch v. Nat'l Prescription Administrators, Inc.*,
795 F. App'x 68 (2d Cir. 2020) ........................................................................................26

iv

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Magic Cross Ranch, L.P. v. Manion*,
    2012 WL 13027449 (N.D. Tex. Sept. 25, 2012) .................................................. 16

*In re Microsoft Corp.*,
    630 F.3d 1361 (Fed. Cir. 2011) .......................................................................... 8

*O'Neill v. Dep't of H.U.D.*,
    220 F.3d 1354 (Fed. Cir. 2000) .................................................................... 22, 23

*Omni MedSci, Inc. v. Apple Inc.*,
    No. 2:18-cv-00134-RWS, Dkt. No. 287 (E.D. Tex. Aug. 23, 2019) ................... 15

*Oyster Optics, LLC v. Coriant America Inc.*,
    2017 WL 4225202 (E.D. Tex., Sept. 22, 2017) ................................................ 15

*Perry v. Burger King Corp.*,
    924 F. Supp. 548 (S.D.N.Y. 1996) .................................................................... 28

*Personal Audio, LLC v. Google, Inc.*,
    280 F. Supp. 3d 922 (E.D. Tex. 2017) .............................................................. 19

*Personalized Media Commn's, LLC v. Google LLC*,
    No. 2:19-cv-00090-JRG, Dkt. 291 (E.D. Tex. July 16, 2020) ........................... 22

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
    215 F.3d 1246 (Fed. Cir. 2000) .................................................................... 23, 25

*Scally v. Hilco Receivables, LLC*,
    392 F. Supp. 2d 1036 (N.D. Ill. 2005) ............................................................... 27

*Seven Networks, LLC v. Google LLC*,
    315 F. Supp. 3d 933 (E.D. Tex. 2018) .............................................................. 20

*In re Toyota*,
    747 F.3d 1338 (Fed. Cir. 2014) ......................................................................... 16

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) ......................................................................... 11

*Uniloc 2017 LLC v. Google LLC*,
    2020 WL 3064460 (E.D. Tex. June 8, 2020) ..................................................... 11

*Uniloc USA, Inc. v. Apple Inc.*,
    2017 WL 11553227 (E.D. Tex. Dec. 22, 2017) ............................................. 7, 16

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Valeant Pharms. N.A. LLC v. Mylan Pharms. Inc.*,
  978 F.3d 1374 (Fed. Cir. 2020)..................................................................................1

*VLSI Tech. LLC v. Intel Corp.*,
  2019 WL 8013949 (W.D. Tex. Oct. 7, 2019) ........................................................12

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ............................................................................11, 14

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ..............................................................................6, 7

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
  2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ........................................................11

*In re ZTE (USA) Inc.*,
  890 F.3d 1008 (Fed. Cir. 2018)......................................................................7, 17

**STATE CASES**

*Smith v. Foodmaker, Inc.*,
  928 S.W.2d 683 (Tex. Ct. App. 1996) ......................................................24, 27, 28

**FEDERAL STATUTES**

28 U.S.C. § 1400......................................................................................6, 7, 22, 28

28 U.S.C. § 1404.........................................................................................1, 2, 6, 16

28 U.S.C. § 1406.........................................................................................1, 2, 6, 30

**TREATISES**

Restatement (Second) of Agency (1958) ...................................................................23

Restatement (Third) of Agency (2006)............................................................ *passim*

## I.  <u>**INTRODUCTION**</u>

Defendants Google LLC ("Google") and Google Payment Corp. ("GPC") move to transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404. All of the identified Google employees with relevant knowledge work in the Northern District of California. But it's not just Google: Plaintiff's sole director and all of the known owners and executives of its parent corporation live and work in the Northern District of California, where the claimed inventions were developed. Virtually all of the relevant, known third parties also are in the Northern District of California, including four of the five inventors and the patent agent who prosecuted all of the asserted patents. Not a single known witness or document relevant to Plaintiff's allegations is in the Eastern District of Texas. As a result, the Northern District of California is a clearly more convenient forum for the parties and the relevant witnesses.

In the alternative, Defendants move to dismiss this case for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or to transfer it to the Northern District of California pursuant to 28 U.S.C. § 1406. Neither GPC nor Google maintain a place of business in the Eastern District of Texas. Plaintiff does not allege that GPC has any place of business in this District. With respect to Google, Plaintiff merely alleges that Google provides online services to, or has entered into service agreements with, third parties that have a presence in this District. The Federal Circuit has consistently warned against such overbroad interpretations of the patent venue statute. *See Valeant Pharms. N.A. LLC v. Mylan Pharms. Inc.*, 978 F.3d 1374, 1379 (Fed. Cir. 2020) ("When faced with other questions growing out of *TC Heartland*, we have narrowly construed the requirements of venue in patent cases."). Neither "electronic communications from one person to another" nor "arms-length contract[s] for services" establish the "place of business" necessary to establish venue in a patent case. *In re Cray Inc.*, 871 F.3d 1355, 1362 (Fed. Cir. 2017).

1

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Should this case be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a)?

2. Alternatively, should this case be dismissed or transferred under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406 for improper venue over Google and GPC in this District?

## III. FACTUAL BACKGROUND

Plaintiff's Complaint alleges that Google and GPC infringe five patents, which generally relate to the use of mobile devices equipped with near-field communication ("NFC") technology to make mobile payments. Complaint ("Compl.") ¶ 97. Plaintiff alleges that Android devices using the Google Pay application (the "Accused Functionality") infringe the patents. *Id*. ¶ 98.

### A. The Location of the Relevant Witnesses and Evidence

#### 1. *Google and GPC's Relevant Employees and Documentary Evidence Are in the Northern District of California.*

Google and GPC are both headquartered in Mountain View, California, in the Northern District of California. Declaration of Daniel Friedland ("Friedland Decl.") ¶ 2; Declaration of Felix Lin ("Lin Decl.") ¶ 2. Google employs more than ▮▮▮ people in the Northern District of California. Friedland Decl. ¶ 3. Although GPC ▮▮▮▮▮▮▮▮▮▮, its officers and directors are all located in the Northern District of California. Lin Decl. ¶ 3.

The individuals responsible for the research, development, and design of the Accused Functionality work in the Northern District of California. Friedland Decl. ¶¶ 4–12. Google has identified at least six Google employees who are likely to have knowledge regarding the Accused Functionality, and all of them are located in the Northern District of California. *Id.* ¶¶ 6–10. In addition, Google's marketing, finance, and sales teams responsible for the Accused Functionality are located in the Northern District of California. *Id.* ¶ 11.

In contrast, when Plaintiff filed its Complaint in August 2020, neither Google nor GPC owned or leased any office space, retail space, or other real property in this District (and still do not); and neither Google nor GPC had (or have now) any employees who work on the Accused Functionality in this District. Declaration of Sallie Lim ("Lim Decl.") ¶¶ 2–4; Friedland Decl. ¶ 4. Google and GPC are not aware of any witness with relevant knowledge in the Eastern District of Texas. Friedland Decl. ¶¶ 4, 11–12.

### 2. *Plaintiff's Directors, Officers, and Documentary Evidence Are in the Northern District of California.*

Plaintiff is a wholly owned subsidiary of a parent corporation that also is named RFCyber Corp. (to avoid confusion, the parent corporation is referred to here as "RFCyber Parent"). RFCyber Parent was incorporated in California in 2003, and has its principal place of business in Fremont, California, which is in the Northern District of California. *See* Declaration of Zachary Briers ("Briers Decl.") Ex. 1. The Plaintiff entity was formed on June 16, 2020, two months before filing this litigation. *Id.* Ex. 6. Plaintiff does not have business operations in Texas (other than litigation) and does not have any assets in the Eastern District of Texas. The Complaint alleges only that Plaintiff has a place of business at 7300 Lone Star Drive, Suite C200, Plano, TX 75024, which is the address for a communal co-working facility run by WeWork. *Id.* Ex. 7; Compl. ¶ 1.

Plaintiff does not have any known employees. Plaintiff's only executive and director, Hsin Pan, is located in the Northern District of California. According to public records, Mr. Pan resides in ██████████. *See* Briers Decl. Exs. 4, 9. Plaintiff does not have any executives or employees in Texas, and there is no indication that any relevant evidence in Plaintiff's possession exists anywhere other than in the Northern District of California.

### 3. *Nearly All Relevant Third Parties, Including the Inventors, Are in the Northern District of California.*

In addition to Mr. Pan, three other inventors and the patent agent who prosecuted the

asserted patents are located in the Northern District of California. There are a total of five named inventors across the five asserted patents. Mr. Pan and Liang Seng Koh are listed as inventors on all five of the patents. Public records show that Mr. Pan and Mr. Koh have lived in the Northern District of California since the earliest relevant patent application was filed in 2006. *See* Briers Decl. Exs. 2–5, 9, 12. Fu-Liang Cho and Fu-Tong Cho are listed as inventors on three of the asserted patents, and public records demonstrate that both men also have lived in the Northern District of California since the earliest patent application was filed. *See id.* Exs. 2–5, 10–11. The fifth inventor, Xiangzhen Xie, who is listed as an inventor on two of the patents, appears to live in Shenzhen, China. *See* Compl. Ex. E (cover page).

The claimed inventions stem from work carried out by RFCyber Parent's employees at its headquarters in Fremont, California. To the extent there are any witnesses with knowledge about the conception, reduction to practice, and prosecution of the claimed inventions, those witnesses (in addition to the named inventors) likely reside in the Northern District of California. For example, all five of the asserted patents were prosecuted by Dr. Joe Zheng, a patent agent in ███████████████. *See* Compl. Exs. A–E; Briers Decl. Ex. 14. Public records show that Dr. Zheng continues to reside in ███████. Briers Decl. Exs. 13–14.

The PTO issued four of the five asserted patents to RFCyber Parent. *See* Compl. Exs. A–E. Although Plaintiff alleges that it is now the owner or exclusive licensee of the asserted patents, Compl. ¶ 1, three patents purportedly were assigned to Plaintiff only on the eve of litigation, and Plaintiff has no publicly recorded rights in the other two patents. *See* Briers Decl. ¶ 17. Defendants intend to take discovery regarding Plaintiff's standing to assert the patents. Documents and witnesses relevant to this issue most likely are located in the Northern District of California, given that RFCyber Parent was the original assignee of all five patents, four inventors are in the Northern

District of California, and Dr. Zheng, who submitted certain assignment records to the Patent Office, also resides in the Northern District of California. *Id.* Ex. 9–15. Conversely, it is unlikely that any evidence relevant to standing is located in this District.

**B.      Plaintiff's Venue-Related Allegations with Respect to GPC and Google**

Plaintiff does not allege that GPC maintains a place of business or any infrastructure within the Eastern District of Texas. Nor does it allege that GPC contracted with any third party that maintains a location in this District. The only venue-related allegation asserted with respect to GPC is that there are retail stores within this District that accept Google Pay as a method of payment and such retailers must "comply with terms of service provided by [GPC]." Compl. ¶¶ 32–34.

Google also does not maintain any place of business or infrastructure within this District. *See* Lim Decl. ¶¶ 3–4. Plaintiff nevertheless alleges that Google contracted to provide services to, or received services from, third parties with a presence in the Eastern District of Texas, including:

1. **Google Fi**. Google offers a cellular service called "Google Fi," which allows users to obtain mobile service using mobile networks maintained by T-Mobile, Sprint, and U.S. Cellular. Declaration of Prithviraj Subburaj ("Subburaj Decl.") ¶ 3. Plaintiff alleges that Google maintains "infrastructure" in this District. Compl. ¶ 41. (As explained below, Google does not maintain infrastructure within this District. All infrastructure is maintained by the network providers.)

2. **Starbucks**. Plaintiff alleges that Google agreed to service certain wireless access points at Starbucks retail locations, including locations in this District. *Id.* ¶¶ 37–38. (As explained below, ███████████████████████████████████████.)

3. **Internet Providers**. Plaintiff alleges that Google entered into agreements with internet providers in this District to host servers referred to as "GGC servers". *Id.* ¶ 13–31. (As explained below, Google has not had any GGC servers in this District since at least ████████████, approximately ████████ before the filing of this case.)

4. **Megaport**. Plaintiff alleges that Google contracted with Megaport, which provides "interconnects" that allow Megaport customers to connect to Google over a secure connection, including via facilities in Carrollton and Lewisville, Texas. *Id.* ¶¶ 45–54.

5. **CTDI**. Plaintiff alleges that Google entered into a service contract with

Communications Test Design, Inc. ("CTDI") to refurbish Google devices, such as Pixel phones. *Id.* ¶ 56. CTDI maintains a facility in Flower Mound, Texas. *Id.* ¶¶ 56–62.

Plaintiff contends that the physical locations of these third parties should be deemed "regular and established place[s] of business" of Google for purposes of establishing venue under § 1400(b), *see id.* ¶¶ 30–31, 34, 38, 41, 54, 56—despite the fact that Google does not own or control these third parties, as discussed in more detail in Part VI below.

## IV.   LEGAL STANDARD

### A.   Law Governing Motion to Transfer

A court may transfer a case to any district where the case could have been brought. §§ 1404(a), 1406(a). In this case, Fifth Circuit law governs the transfer analysis. *See In re Genentech, Inc.*, 566 F.3d 1338, 1341–42 (Fed. Cir. 2009) (holding that regional circuit law governs § 1404(a) motion). A motion to transfer venue should be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").[1]

In assessing whether the defendant has demonstrated that transfer is appropriate, courts in the Fifth Circuit weigh "private" and "public" interest factors. *Id.* "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 315. "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

---

[1] Citations and internal quotation marks omitted unless otherwise noted.

"These factors are to be decided based on the situation which existed when suit was instituted." *Uniloc USA, Inc. v. Apple Inc.*, 2017 WL 11553227, at *4 (E.D. Tex. Dec. 22, 2017) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)). "[O]nce a party files a transfer motion, disposing of that motion should unquestionably take top priority." *In re Apple Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020).

### B.    Law Governing Motion to Dismiss

In a patent case, venue is proper only "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." § 1400(b). Federal Circuit law governs the §1400(b) analysis. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

"The plaintiff bears the burden of establishing proper venue." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1014 (Fed. Cir. 2018). To show that the defendant maintains "a regular and established place of business" in the venue, the plaintiff must prove three elements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray*, 871 F.3d at 1360. "If any statutory requirement is not satisfied, venue is improper." *Id.* It is important "not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases." *Id.* at 1361. For example, "the mere presence of a contractual relationship between" the defendant and a contractor "does not necessarily make" the contractor's location "a regular and established place of business" of the defendant. *In re ZTE*, 890 F.3d at 1015.

## V.    <u>MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA</u>

This case would be more conveniently litigated in the Northern District of California, where Google, GPC, and RFCyber Parent are all headquartered and where virtually all of the

relevant witnesses are located. The Fifth Circuit's private and public factors weigh heavily in favor of transfer to the Northern District of California.

### A.     Plaintiff's Alleged Ties to this District Carry No Weight.

Before turning to the public and private factors, it is important to note that Plaintiff's alleged ties to the Eastern District of Texas should be accorded no weight in the analysis. Plaintiff incorporated in Texas only two months before filing this litigation and has no known business in Texas. Plaintiff does not have any known employees in Texas, and all of its directors and executives reside near the headquarters of RFCyber Parent in Fremont, California, which is only twenty miles from Google's headquarters in Mountain View, California, both of which are in the Northern District of California.

The Federal Circuit has ordered transfer in similar circumstances. For example, in *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011), the plaintiff ostensibly had an office in the Eastern District of Texas but it had no employees there, and it had incorporated in Texas just weeks before filing suit. The court found such connections to the district "were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue" and ordered transfer out of the Eastern District of Texas. *Id.* at 1365; *see also In re Hoffmann–LaRoche*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) (rejecting "[a] plaintiff's attempt to manipulate venue in anticipation of litigation" by moving documents prior to filing suit).

As in other patent actions, the preferred forum should be "that which is the center of gravity of the accused activity." *Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F. Supp. 2d 1039, 1044 (S.D. Tex. 2007). "[I]n intellectual property infringement suits, which often focus on the activities of the alleged infringer, its employees, and its documents, . . . the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." *Id.* Because the "center of gravity" in this case is the

8

Northern District of California, the Court should transfer the case there.

**B.     The Private Interest Factors Favor Transfer.**

**1.     *The Convenience of the Witnesses Favors Transfer.***

The convenience of the witnesses is "probably the single most important factor in a transfer analysis." *In re Genentech,* 566 F.3d at 1343. This factor considers the convenience of both party and non-party witnesses, with greater weight afforded to non-party witnesses. *See Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 875 (E.D. Tex. 2013). In this case, the great majority of known witnesses reside in the Northern District of California; none resides in Texas. *See supra*, at 2–5.

Defendants are presently aware of at least four non-party witnesses residing in the Northern District of California—specifically, three of the inventors of the patents-in-suit, Mr. Koh, Mr. Fu-Tong Cho, and Mr. Fu-Liang Cho; and the patent agent, Dr. Zheng, who prosecuted each of the patents. Briers Decl. Exs. 9–15. In addition, a fourth inventor, Mr. Pan, who also serves as Plaintiff's director, resides in the Northern District of California.[2] These individuals are expected to have knowledge and documents regarding the following topics relevant to this litigation:

- The **conception, development, and reduction** to practice of the claimed inventions;

- The **determination of inventorship** for the subject matter claimed;

- **Prosecution** of the asserted claims, **including prior art** identified in connection with the asserted patents;

- Circumstances surrounding the **first use, description, and disclosure** of the claimed inventions;

---

[2] The fifth inventor, Mr. Xie, is a non-party witness who resides in Shenzhen, China, and therefore cannot be compelled to testify at deposition or trial in this case. *See* Compl. Ex. E (cover page). To the extent Mr. Xie is willing to appear voluntarily, it would be more convenient for him to travel to California than to Texas, particularly given the fact that RFCyber Parent's headquarters are located there. *See AGIS Software Dev. LLC v. Huawei Device USA Inc.*, 2018 WL 2329752, at *7 (E.D. Tex. May 23, 2018) (finding "the distance between Shenzhen, China, and Marshall, Texas, is, obviously greater than the distance between Shenzhen, China, and San Francisco.").

- **Attempts to commercialize** the claimed inventions; and

- **Licensing, ownership, and valuation** of the patents, including information related to Plaintiff's standing to sue for infringement in this case.

With respect to party witnesses, in addition to Mr. Pan, the most relevant known Google employees with knowledge of the design, research, development, and marketing of the Accused Functionality work in the Northern District of California. The following Google employees—all of whom work in the Northern District of California—have material and relevant knowledge regarding the Accused Functionality:



*See* Friedland Decl. ¶¶ 6–10. The marketing, finance, and sales teams responsible for the Accused Functionality also have offices in the Northern District of California. *Id.* ¶ 11.

All of these party and non-party witnesses are located in the Northern District of California. Marshall, Texas, is more than 1,800 miles by car from the Northern District of California. Even

by air, it takes at least seven hours to reach Marshall from the Northern District of California.[3] "The task of scheduling fact witnesses [for trial] so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour." *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004) ("*Volkswagen I*"). For this reason, the Fifth Circuit has held that, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.*; *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).

In contrast to the many party and non-party witnesses present in the Northern District of California, there are no known witnesses in the Eastern District of Texas, or anywhere in the State of Texas. This Court has granted transfer motions on similar facts. *See, e.g.*, *Uniloc 2017 LLC v. Google LLC*, 2020 WL 3064460, at \*6 (E.D. Tex. June 8, 2020) (finding the Northern District of California to be "clearly more convenient" where, "keeping the Fifth Circuit's 100-mile rule in mind, Google ha[d] shown that far more witnesses in this case, both party and non-party, are in the Northern District or close to it"); *Wireless Recognition Techs. LLC v. A9.com, Inc.*, 2012 WL 506669, \*5 (E.D. Tex. Feb. 15, 2012) (granting transfer motion where "the number of witnesses residing in Texas, and any relevant information which they may provide, pales in comparison to the number of party and non-party witnesses with relevant information residing in Northern California"). This factor thus weighs in favor of transfer.

---

[3] As there are no direct flights between Bay Area airports and Marshall, Texas, traveling to Marshall requires flying into Dallas then driving about 170 miles, or changing planes to fly into Shreveport, Louisiana, then driving another 35 miles.

### 2.     *The Availability of Compulsory Process Favors Transfer.*

"Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses." *Adaptix,* 937 F. Supp. 2d 874. Thus, "[t]his factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *Deep Green Wireless LLC v. Ooma, Inc.* 2017 WL 679643, at *3 (E.D. Tex. Feb. 21, 2017) (quoting *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014)).

As explained above, Defendants have identified at least four relevant non-party witnesses in the Northern District of California, including inventors of the asserted patents, who are often the most important third-party witnesses in a patent case. *VLSI Tech. LLC v. Intel Corp.*, 2019 WL 8013949, at *4 (W.D. Tex. Oct. 7, 2019) ("Because inventors' testimony is extremely important, inventors are key witnesses and the Court gives greater weight to their convenience."). The Northern District of California has subpoena power over them. On the other hand, Defendants are not aware of any third-party witnesses within this Court's subpoena power. Where, as here, "the transferee venue is a venue with usable subpoena power," this factor "weighs in favor of transfer, and not only slightly." *In re Genentech*, 566 F.3d at 1345.

### 3.     *Ease of Access to Relevant Sources of Proof Favors Transfer.*

When considering the ease of access to evidence, courts look to where relevant documents are stored. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech*, 566 F.3d at 1345. "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.*

In this case, the vast majority of Defendants' documents related to the Accused Functionality are created and maintained by Google's employees in the Northern District of California. Friedland Decl. ¶¶ 4–12. By contrast, no such documents are located or maintained in the Eastern District of Texas. *Id.* The location of these documents thus weighs in favor of transfer.

12

Other relevant parties may also have documents in the Northern District of California. RFCyber Parent, as the initial assignee of the patents, likely has documents and other relevant evidence at its headquarters in Fremont, California, including documents relevant to the question of whether Plaintiff has an ownership interest in the asserted patents. Relevant physical evidence likely also would be found in the possession of the four inventors and their patent agent who have lived and worked in the Northern District of California since the earliest patent application was filed. On the other hand, Plaintiff is unlikely to maintain any documents in the Eastern District of Texas, as its only location in this District is a rented WeWork space, which is unlikely to be a place where documents are stored in light of the communal nature of that co-working facility.

### 4.     *Practical Considerations Weigh in Favor of Transfer.*

Practical considerations weigh in favor of transfer. As explained below, venue in this District is plainly improper over GPC, one of the two Defendants in this case. If the Court dismisses or transfers Plaintiff's claims against GPC, it would disserve judicial economy to splinter the two co-defendants here and to force a dispute as to the same Accused Functionality to be litigated in separate venues. The fact that venue is plainly improper as to GPC, thus, weighs in favor of transferring the rest of the case.

On the other hand, there are no practical considerations that weigh against transfer. Plaintiff may argue that judicial economy weighs against transfer because Plaintiff filed actions asserting the same patents against Samsung and LG Electronics two months after it filed this case. However, the accused technology in those cases concerns proprietary payment software applications and handset devices made by Samsung and LG, which are different from the Accused Functionality in this case. Additionally, when evaluating a motion to transfer, a court must look to "the situation which existed when suit was instituted," not any subsequent actions. *Hoffman*, 363 U.S. at 343. While "a district court may properly consider any judicial economy benefits which would have

13

been apparent at the time the suit was filed," any "considerations of judicial economy arising after the filing of a suit do not weigh against transfer." *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013); *see In re HP Inc.*, 826 F. App'x 899, 902 –903 (Fed. Cir. 2020) (per curiam) (directing transfer to California, despite co-pending suits in Texas).

The Federal Circuit, applying Fifth Circuit law, has held that "it is improper for a district court to weigh the judicial economy factor in a plaintiff's favor solely based on the existence of multiple co-pending suits." *In re Google*, 2017 WL 977038, at *3 (Fed. Cir. 2017). Given that the other private interest factors weigh heavily in favor of transferring this case to the Northern District of California—not to mention that the later-filed actions are at an even earlier stage than this case— the existence of the Samsung and LG cases should be accorded no weight.

### C.    The Public Interest Factors Favor Transfer.

#### 1.    *The Northern District of California's Interests Favor Transfer.*

The "local interest in having localized interests decided at home weighs heavily in favor of" the district where the events at issue in the case occurred. *Volkswagen I*, 371 F.3d at 206. In a case such as this one, where the alleged infringers, "the inventor[s] and patent prosecuting attorneys" are "all residents of that [transferee] district," this factor "strongly favors transfer." *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

Plaintiff, Defendants, and key non-party witnesses all reside, or have strong connections to, the Northern District of California. In contrast, Plaintiff's only ties to this District— incorporation in Texas and a co-working space—were established in anticipation of litigation. Under these circumstances, the Northern District of California has a strong "local interest" because this case "calls into question the work and reputation of several individuals residing in or near that district." *In re Hoffman-La Roche*, 587 F.3d at 1336; *see also, e.g.*, *Oyster Optics, LLC v. Coriant America Inc.*, 2017 WL 4225202, at *8 (E.D. Tex., Sept. 22, 2017) (granting transfer motion where

14

the defendant's largest R&D facility was in California and the plaintiff "incorporated in Texas five months before bringing the instant suit" and "possesse[d] no facilities or employees in the district"); *In re Google*, 2017 WL 977038, at *3 n.3 ("Given the relative strength of Google's ties to the Northern District of California juxtaposed with [the plaintiff's] ties to the Eastern District of Texas, it would appear that this factor weighs in Google's favor as well.").

### 2. *The Time to Resolution Is Neutral.*

"The speed with which a case can come to trial and be resolved is a factor in the transfer analysis," *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 125 (E.D. Tex. 2009), although it often is "the most speculative" of the factors, *In re Genentech*, 566 F.3d at 1347. The median time from filing to jury trial in patent cases is 25.7 months in the Northern District of California and 21.9 months in the Eastern District of Texas—a difference of only 3.8 months. *See* Briers Decl. ¶¶ 18–19 & Exs. 16–17. In addition, the difference in median time to termination for patent cases in the two districts—which is at least as important, if not more important, to the parties and public as the median time to trial—is only 1.8 months. *Id.* Exs. 16–17. Courts in this district have found that even a six-month difference "does not make one venue or the other clearly more convenient" and renders this factor "neutral." *Largan Precision Co. v. Ability Opto-Elecs. Tech. Co.*, 2020 WL 3078042, at *6 (E.D. Tex. June 10, 2020), *vacated on other grounds sub nom. In re HP Inc.*, 826 F. App'x 899. As a court in this District recently observed, there is "no significant difference in the time to trial between this district and the Northern District of California." *Omni MedSci, Inc. v. Apple Inc.*, No. 2:18-cv-00134-RWS, Dkt. No. 287, at 8 (E.D. Tex. Aug. 23, 2019).

### 3. *The Remaining Public Interest Factors Are Neutral.*

The remaining public interest factors are neutral. Both districts are familiar with the application of patent law, and this case presents no material problems of conflicts of law or the application of foreign law. *See Magic Cross Ranch, L.P. v. Manion*, 2012 WL 13027449, at *3

(N.D. Tex. Sept. 25, 2012) ("The Court finds that the other public interest factors are neutral. Both [districts] are equally capable of applying the law that will govern the case. No issues exist which suggest any potential problems of conflict of laws or applying foreign law. Many courts are congested, and this factor is neutral.").

###### D.    The Balance of the Private and Public Interest Factors Favors Transfer.

Taken together, the § 1404(a) factors paint a clear overall picture: the Northern District of California is the appropriate venue for this case. The center of gravity for the activities that gave rise to the suit, in particular the work that led to the asserted patents, as well as the development of the Accused Functionality, occurred in California. The key witnesses and evidence are located there, and none is located in the Eastern District of Texas. Where there is effectively "nothing on the transferor-forum side of the ledger, . . . the transferee forum is '*clearly* more convenient.'" *In re Toyota*, 747 F.3d 1338, 1341 (Fed. Cir. 2014); *see Uniloc v. Apple*, 2017 WL 11553227, at *9 –10 (finding "the convenience of the witnesses weigh[ed] strongly in favor of transfer" where the defendant "named multiple party and non-party witnesses residing within the Northern District of California, while [the plaintiff] ha[d] named only one employee who resides part-time in the Eastern District of Texas"). Accordingly, the Court should grant Defendants' motion to transfer this case to the Northern District of California.

## VI.    <u>MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE</u>

If the Court does not transfer this case under § 1404(a), it should dismiss or transfer it for improper venue. Plaintiff has failed to meet its burden of demonstrating that either GPC or Google maintains a regular and established place of business in the Eastern District of Texas.

To establish venue, Plaintiff must show that there is "a physical, geographical location in

16

the district from which the business of the defendant is carried out."[4] *Cray*, 871 F.3d at 1362. This "requires the regular, physical presence of an employee or other agent of the defendant." *In re Google*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). When there are multiple defendants, a plaintiff must satisfy the venue statute's requirements with respect to each defendant. *AGIS Software Dev., LLC v. ZTE Corp.*, 2018 WL 4854023, at *4 (E.D. Tex. Sept. 28, 2018).

Plaintiff fails to meet its burden to show that venue is appropriate for either GPC or Google. With respect to GPC, Plaintiff does not even allege that GPC maintains a place of business in this District. As for Google, Plaintiff attempts to rely on the fact that Google offers certain virtual services within this District, or contracts with certain service providers in this District, but each of those attempts fails. The mere provision of online services does not establish a place of business. And the service providers identified by Plaintiff are not Google's agents, as they neither have the authority to alter Google's legal relationships with third parties nor are they subject to Google's interim control.

### A.    Plaintiff Has Failed to Demonstrate that GPC Has a Place Of Business Within this District.

Although Plaintiff bears the burden to demonstrate that venue is proper, *In re ZTE*, 890 F.3d at 1014, it has not even alleged that GPC has any place of business in this District. Nor could it, as GPC does not own, lease, or control any real property or equipment in the Eastern District of Texas, and GPC does not have any employees here. Lin Decl. ¶¶ 8–9.

The Complaint obliquely states that retail merchants, such as a McDonald's or Walgreens,

---

[4] In resolving this motion, the Court must look beyond the allegations of the Complaint and make specific factual findings. *See, e.g.*, *In re ZTE*, 890 F.3d at 1015 (reversing because district court did not "give reasoned consideration to all relevant factors" and "made no findings" with respect to relevant facts); *Kranos IP Corp. v. Riddell, Inc.*, 2017 WL 3704762, at *2 (E.D. Tex. Aug. 28, 2017) (district court should consider "affidavits or evidence submitted by a defendant in support of its motion dismiss" for improper venue).

who accept Google Pay as a form of payment are required to "comply with terms of service provided by [GPC]." Compl. ¶¶ 32–34. This allegation does not establish that GPC maintains a place of business in this District. Neither GPC nor Google exercises any interim control over the merchants that accept Google Pay. Neither GPC nor Google has any employees or agents that are physically present at the merchant's locations. *See In re Google*, 949 F.3d at 1345. As a result, the places of business of the retail merchants that accept Google Pay are not regular and established places of business of GPC. *See Andra Grp., LP v. Victoria's Secret Stores, LLC,* 2020 WL 1465894, at *4 (E.D. Tex. Mar. 26, 2020) (finding that extensive collaboration between apparel manufacturer and retail store operator "do not amount to establishing that Stores' employees are subject to Non-Store Defendants' control such that they could be considered agents of the Non-Store Defendants").

Nor can Plaintiff attribute to GPC any place of business alleged as to Google. Google and GPC are separate legal entities, and they maintain corporate separateness. *See* Lin Decl. ¶¶ 3–6. "Courts ordinarily will not treat the place of business of one corporation as the place of business of the other," even if the two entities are affiliated, as long as "a formal separation of entities is preserved." *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, 2018 WL 2544564, at *2 (E.D. Tex. June 4, 2018) (Bryson, J.). Piercing the corporate veil in this context, no less than in corporate law generally, "is a difficult standard to meet . . . even if a parent corporation controls a subsidiary's operations and the companies share a unitary business purpose." *Id.* GPC and Google constitute distinct legal entities, and Plaintiff has not alleged any facts suggesting that GPC does not maintain corporate separateness from Google. As a result, the Court should dismiss Plaintiff's claims against GPC for improper venue.

### B.   Plaintiff Has Failed to Demonstrate that Google Has a Place of Business Within this District.

Plaintiff does not allege that Google directly maintains any place of business within this District. Instead, Plaintiff alleges that Google offers online services, and contracts with third-party companies, in this District. These allegations do not demonstrate that Google has a physical presence that is sufficient to support venue in this District.

#### 1.   *Google Does Not Offer Google Fi from any Physical Place of Business in this District.*

Plaintiff alleges that Google offers its Google Fi service in this District, Compl. ¶ 41, but does not allege that Google maintains "a physical, geographical location" from which it offers the service. *In re Cray*, 871 F.3d at 1362. Rather, Plaintiff contends that Google owns "infrastructure," such as "cell towers," in the District. Compl. ¶¶ 40–41. That is incorrect. Google does not own, lease, or maintain any telecommunications infrastructure here. All Google Fi services are provided using infrastructure owned by mobile carriers, such as T-Mobile. *See* Subburaj Decl. ¶¶ 3–4, 6. Even if Google did maintain infrastructure here, Plaintiff does not allege that such infrastructure involves "the regular, physical presence of an employee or other agent of [Google]." *Google*, 949 F.3d at 1345 (holding that the presence of Google's GGC services within the Eastern District of Texas at the time did not create a "regular and established place of business" of Google); *see also Personal Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 934 (E.D. Tex. 2017) (dismissing idea that "every single AT&T tower" could be "a place of business for AT&T"); Restatement (Third) of Agency § 1.04 cmt. e (2006) ("[I]t is not possible for an inanimate object to be a principal or an agent under the common-law definition of agency."). As a result, Plaintiff's allegations regarding Google Fi do not establish that venue is appropriate.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

2.  ████████████████████████████████
    ████████████████████████ *and, Even If It Had Not, Google Did Not*
    *Offer the Service from a Physical Place of Business.*

Plaintiff next alleges that Google agreed to install and maintain "Wi-Fi infrastructure" at Starbucks's retail locations. Compl. ¶¶ 37–39. Even if it were correct—it is not—this allegation is insufficient to establish proper venue for two independent reasons.

*First*, ██████████████████████████████████████████████████

████. *See* Declaration of Adam Henson ¶¶ 9–10. Since August 2019, Google has not installed or serviced any Wi-Fi infrastructure at any Starbucks location. *Id.* Because "venue is assessed as of the time of filing of the complaint," *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 941 n.7 (E.D. Tex. 2018), ████████████████████████████████████████.

*Second*, even if ███████████████████████, the services Google provided to Starbucks would have been insufficient to establish venue because those services did not involve "a physical, geographical location in the district," *In re Cray*, 871 F.3d at 1362, at which there was "the regular, physical presence of an employee or agent of [Google]," *In re Google*, 949 F.3d at 1345. Plaintiff does not allege otherwise. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████. *See* Henson Decl. ¶¶ 5–6.

3.  *No GGC Servers Have Been Present in this District Since Before the*
    *Commencement of this Action And, Even If They Were, Those Servers*
    *Did Not Constitute a Regular and Established Place of Business.*

Plaintiff alleges that Google maintains "GGC servers" in this District to "conduct the business of providing access to the world's information." Compl. ¶¶ 13–31. Plaintiff's allegation is false. There have not been any GGC servers in this District since at least ██████████████, approximately ██████ before the filing of this case. *See* Declaration of Keith McCallion ¶ 14.

20

Since then, Google has not operated any GGC servers in this District. *See id.* Besides, the Federal Circuit has expressly held that the presence of GGC servers does not establish a "regular and established place of business" of Google in that district. *In re Google*, 949 F.3d at 1345–57. Plaintiff has alleged nothing beyond what the Federal Circuit previously considered and rejected. *Compare* Compl. ¶¶ 13–31, *with In re Google*, 949 F.3d at 1339–41.

### 4.     *Google Does Not Offer Interconnect Services from any Location in this District, And Google Does Not Own, Operate, Or Control the Equipment Identified by Plaintiff.*

Plaintiff alleges that Google offers interconnect services referred to as "Google Cloud Interconnect" and "Direct Peering" in this District. Compl. ¶¶ 45–54. In particular, Plaintiff alleges that, in order to support the interconnect services, Google provides unspecified "physical equipment" to a company called Megaport, which Plaintiff contends operates facilities in Dallas. *Id.* ¶ 53. Once again, Plaintiff's allegations are false. Google does not provide any equipment to Megaport, and Google does not own or lease any equipment maintained in Megaport facilities. *See* Declaration of Joshua Cha ("Cha Decl.") ¶ 7. Moreover, Megaport does not own, lease, or operate any facilities anywhere within the Eastern District of Texas.[5] *Id.* Thus, there is no "physical, geographical location in the district," *In re Cray*, 871 F.3d at 1362, where Google offers the interconnect services.

### 5.     *Google's Receipt of Services from CTDI Does Not Establish a Regular and Established Place of Business of Google in this District.*

In addition to the services that Google offers in this District, Plaintiff alleges that Google receives refurbishment and repair services from CTDI. Compl. ¶¶ 55–62. Plaintiff alleges that CTDI acts as Google's agent, and therefore CTDI's facility in Flower Mound should be deemed a

---

[5] The facilities at the addresses identified in the Complaint appear to be operated by a company called CyrusOne. *See* Cha Decl. ¶¶ 8–9. Google does not have any relationship (contractual or otherwise) with CyrusOne. *Id.* Nor does Google provide equipment or services to CyrusOne. *Id.*

regular and established place of business of Google. *Id.* (citing *Personalized Media Commn's, LLC v. Google LLC*, No. 2:19-cv-00090-JRG, Dkt. 291 (E.D. Tex. July 16, 2020) ("*PMC*")).

Plaintiff's allegations do not establish that CTDI acts as Google's agent, or that CTDI's location constitutes Google's place of business, for three independent reasons. *First*, CTDI does not have the authority to interact on Google's behalf with customers or other third parties—let alone alter Google's relations with them—and is therefore not Google's agent. *Second*, Google does not exercise interim control over CTDI's conduct or operations, such as CTDI's personnel decisions, and therefore does not have the requisite control to form an agency relationship. *Third*, the business CTDI conducts at the Flower Mound facility—refurbishment and repair services—is not Google's business, and therefore that location is not Google's "place of business" for purposes of § 1400(b). Although this Court previously reached the opposite conclusion, that determination is not controlling in this case, *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011), and the Court should revisit it in light of the Federal Circuit's recent recognition that Google's "arguments based on the law of agency and [Federal Circuit] precedent" are "viable." *In re Google LLC*, 823 F. App'x 982, 983 (Fed. Cir. 2020).

(a)    *CTDI Is Not Google's Agent Because It Does Not Have Authority to Alter Google's Legal Relations with Third Persons.*

For an agency relationship to exist, the agent must be authorized to act on the principal's behalf. *In re Google*, 949 F.3d at 1345. In interpreting this requirement, the Federal Circuit has consistently followed the Restatement of Agency. *See id.* (adopting Restatement (Third) of Agency (2006) (hereinafter "Restatement")); *O'Neill v. Dep't of H.U.D.*, 220 F.3d 1354, 1360 (Fed. Cir. 2000). The Restatement distinguishes between "a non-agent service provider," such as CTDI, and an "agent." *See* Restatement § 1.01 cmt. c. A non-agent service provider provides services to the service recipient, but does not have authority "to affect the legal rights and duties of the other

22

person." *Id*. A "service provider" who "does not interact with third parties as the representative of the [service] recipient . . . is not acting as an agent." *Id*. In contrast, an agent "has the authority to 'alter the legal relations between the principal and third persons.'" *O'Neill*, 220 F.3d at 1360. When assessing whether an agency relationship exists, "the court must decide . . . 'whether the alleged agent can affect the legal relationships of the principal.'" *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1256 (Fed. Cir. 2000).

CTDI is not authorized to alter the legal relationships between Google and its customers. In fact, CTDI is not even authorized to communicate with customers on Google's behalf. Google conducts all communications with its customers regarding products to be refurbished or repaired. *See* Briers Decl. Ex. 20 (Statement of Work ("SOW")) at ¶¶ 6.1, 6.5–6.12. Google also provides to its customer all instructions with respect to such products, including prepaid shipping labels. *See id.* ¶ 6.5. CTDI never communicates with Google's customers. CTDI simply receives and services devices pursuant to a Statement of Work with Google. *Id.* ¶¶ 6.5-6.12.

Because CTDI does not interact with third parties on Google's behalf, CTDI does not engage in conduct that would alter Google's legal relationships with third parties. As this Court previously observed, Google's customers have "no idea that CTDI exists." *PMC*, Dkt. 291 at 8. That fact contrasts sharply with an agency relationship, where an agent "interact[s] with third parties as the representative" of the principal. Restatement § 1.01 cmt. c. Without this "essential ingredient[]," CTDI cannot be Google's agent. *CNE Direct, Inc. v. Blackberry Corp.*, 821 F.3d 146, 150 (1st Cir. 2016) (applying Restatement (Second) of Agency (1958)).

The service agreement between Google and CTDI confirms this fact. That agreement expressly states that it "does not create any agency" relationship. Briers Decl. Ex. 19 (Google Inbound Services Agreement ("ISA") ¶ 12.12 (emphasis added). Instead, CTDI "is an independent

contractor," whose personnel "are not Google employees." *Id.* at ¶ 7.1. While not dispositive, these disavowals are persuasive evidence that an agency relationship was not established. *Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 717 (4th Cir. 2014) ("Such clear expressions of intent in the governing contract persuade us that an agency relationship was not established."); *Arguello v. Conoco, Inc.*, 207 F.3d 803, 807–08 (5th Cir. 2000) ("Despite the plaintiff's interpretation . . . , the plain language of the [agreement] defines the relationship" by stating that the parties are not "agents of each other."); *Smith v. Foodmaker, Inc.*, 928 S.W.2d 683, 688 (Tex. Ct. App. 1996) ("[T]he franchise agreement clearly states that the franchisee is an independent contractor," not an agent.).

> (b)      *CTDI Is Not Google's Agent Because Google Does Not Exercise Interim Control over CTDI's Operations.*

Another essential element of agency is "the principal's right to direct or control the agent's actions." *In re Google*, 949 F.3d at 1345. "The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *Id.* at 1345–46 (citing Restatement § 1.01 cmt. f(1)). The principal must have "the right throughout the duration of the relationship to control the agent's acts." Restatement § 1.01 cmt. c.

Plaintiff alleges that the "control" requirement is satisfied because "Google controls and oversees virtually every aspect of how CTDI performs its services, including how it receives, diagnoses, repairs, warehouses, packages, and ships the Google devices." Compl. ¶ 58. However, the record shows that the "control" Plaintiff references is embodied in contractual requirements that specify the services to be provided by CTDI, not in Google's ability to exercise interim control over CTDI's day-to-day operations.

It is for "[t]he court [to] decide whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent." *Rotec*, 215 F.3d at 1256. Here, the agreements between Google and CTDI make clear that, although CTDI must provide certain services to Google, CTDI has wide latitude to select the manner and method CTDI will use to provide those services. For example, CTDI has unilateral control over:



Google does not have control over any of these matters, which all concern "the manner and method in which work is carried out by the alleged agent." *Rotec*, 215 F.3d at 1256.

Plaintiff ignores the fact that CTDI has control over the manner and method by which it will perform the services, choosing instead to focus on the fact that the SOW describes the services to be performed with a high degree of specificity. *See* Compl. ¶ 58. It is true that the SOW specifies

the types of services to be provided with particularity. But specifically describing the services does not establish the interim operating control that creates an agency relationship. "Many agreements to provide services . . . specif[y] terms and conditions creating contractual obligations that, if enforceable, prescribe or delimit the choices that the service provider has the right to make." Restatement § 1.01 cmt. f. "The fact that such an agreement imposes constraints on the service provider does not mean that the service recipient has an interim right to give instructions to the provider." *Id.*; *see also Lynch v. Nat'l Prescription Admin., Inc.*, 795 F. App'x 68, 69 (2d Cir. 2020) (holding that an agency relationship does not arise where a contractor "simply carrie[s] out the detailed process outlined in the contract"). In distinguishing between a service provider and an agent, the question is not whether the principal specified the services to be provided in a contract, no matter how specific such contract might be. The question is whether the principal has "the power to give interim instructions" after the contract is executed, including "the right throughout the duration of the relationship to control the agent's acts." Restatement § 1.01 cmts. c & f.

The SOW confirms that Google does *not* exercise the interim control necessary for an agency relationship to exist. The agreement states that Google may not order a significant alteration to the manner, method, or type of services to be provided by CTDI. *See* Briers Decl. Ex. 20 (SOW) ¶ 6.15(B). Such an alteration may be made only by mutual agreement, when "an amendment to th[e] SOW is executed" by both parties. *Id.* The ISA similarly states that it sets forth "all the terms agreed between the parties" and that neither party may alter those terms without executing a mutually agreed-upon amendment to the contract. *Id.* Ex. 19 (ISA) ¶¶ 12.15, 12.16.

The types of matters over which Google has ongoing input are minor, and tangential to the services provided by CTDI. For example, Google may instruct CTDI to update the version of the operating system it installs on refurbished devices (SOW ¶ 6.8(A)), change the style and position

26

of shipping labels (*id.* ¶ 6.10(A)), and store refurbished products for a specified period of time (*id.* ¶ 6.11(C)).[6] Google may only implement these "minor changes" when they would not "require a material change" to CTDI's "staffing model" or an employee's "skillset," would not require "material modification to existing systems or the introduction of new systems," and would not "have an adverse effect on [CTDI's] costs." *Id.* ¶ 6.15(A).

The ability to implement minor modifications is commonplace in complex, long-term services agreements, and courts routinely find these provisions do not establish an agency relationship. In *Smith*, for instance, the defendant franchisor entered into an agreement that permitted a franchisee to operate restaurants using the "Jack-in-the-Box" brand. 928 S.W.2d 683. The agreement gave the defendant far more interim control over the franchisee's operations than Google has over CTDI's ongoing conduct. For example, the defendant franchisor "'retained sole and absolute discretion . . . to establish . . . standards, specifications, and procedures' for [the franchisee's] equipment, restaurant facilities, and service format," which could be changed from time to time. *Id.* at 685. The franchisor had "control over the hours of operation of the restaurant," "the right to inspect the restaurant's operations," and the right to approve or reject "improvements to the restaurant premises." *Id.* And "the franchise agreement required [the franchisee] to follow [the franchisor's] instructions regarding marketing and food preparation." *Id.* at 688. Notwithstanding the significant control the franchisor exercised, the appellate court held that an agency relationship was not formed because "the day-to-day operation of the restaurant in question was delegated fully to [the franchisee]." *Id.*; *see also Arguello.* 207 F.3d at 806–08 (holding

---

[6] Google also may request that CTDI provide periodic reports and confer with Google at certain periods. *See* Compl. ¶¶ 58 & n.29. But reporting does not equate to control and, in any event, does not establish an agency relationship. *See Scally v. Hilco Receivables, LLC*, 392 F. Supp. 2d 1036, 1040 (N.D. Ill. 2005) (rejecting theory that "daily, weekly and monthly . . . reports" created agency relationship) (cited with approval in Restatement § 1.01 Reporter's Notes).

franchisee is not agent of franchisor, notwithstanding that agreement required franchisees "to maintain their businesses according to the standards set forth" by the franchisor); *Perry v. Burger King Corp.*, 924 F. Supp. 548, 554 (S.D.N.Y. 1996) (similar). The same is true here.

Rejecting a similar agency theory to the one Plaintiff posits here, a district court recently held in *ES Distribution, LLC, v. Hangtime LLC*, 2020 WL 6689755 (D.N.J. Nov. 13, 2020), that "a third-party fulfillment center that store[d] and ship[ped] [d]efendant's products" did not serve as a place of business "of the defendant." *Id.* at *2–3. This was so, the district court concluded, even though the defendant "provide[d] some instruction to [the distributor] as to how it would prefer its shipments be made" and the defendant's "shipping labels and packing slips identify its mailing address" corresponding to the distribution center. *Id.* at *3. So too here.

Plaintiff's focus on the SOW's level of detail actually demonstrates the lack of an agency relationship. It is well recognized that an agency contract has *less* need for "the detail and specificity that typify the instruments embodying the terms of many arm's-length commercial and financial relationships." Restatement § 1.01 cmt. e. If CTDI were Google's agent, Google could simply direct it as Google pleased—there would be no need for detailed contractual provisions. Instead, Google does not exercise control over CTDI's day-to-day operations and may not unilaterally alter the services to be provided. CTDI therefore is not Google's agent.

(c)     *CTDI Performs Only Ancillary Services for Google and Does Not Conduct Google's Business.*

CTDI does not act as Google's agent for the additional reason that CTDI's repair services do not amount to conducting Google's business. To be deemed an agent for purposes of § 1400(b), CTDI must be "conducting Google's business within the meaning of the statute." *Google*, 949 F.3d at 1346. In defining a defendant's "business," the Federal Circuit distinguishes between "the actual producing, storing, and furnishing to customers of what the business offers" and "ancillary"

functions, such as "[m]aintaining equipment." *Id*. The venue statute does not sweep in "agents' activities, such as maintenance, that are merely connected to, but do not themselves constitute" the defendant's business. *Id.* at 1347.

Google's primary business is supplying search results, video content, and related advertisements in response to user search requests. It also offers software as well as certain hardware, such as Pixel phones. But Google is not in the business of post-sale refurbishment and repairs of electronic devices. That is precisely why Google contracts out such work to independent contractors like CTDI. Extending the patent venue statute to cover commonplace warranty work—particularly work performed by an independent contractor—would sow uncertainty about where companies could be subject to patent suits and would waste "resources on [this] threshold, non-merits issue[]." *Id.* at 1347.

### 6. *Plaintiff's Remaining Allegations Do Not Satisfy the Patent Venue Statute.*

Plaintiff's scattershot allegations about other Google services also fail to establish venue in this District. *See* Compl. ¶¶ 74–78. While users may access Google services from (or request information about) locations in this District, the Federal Circuit has "rejected the notion that a 'virtual space' or 'electronic communications from one person to another' could constitute a regular and established place of business." *In re Google*, 949 F.3d at 1343. Instead, a "place of business" requires a fixed physical presence within the District. *In re Cray*, 871 F.3d at 1362. Plaintiff offers no evidence (and no such evidence exists) that the Google services it identifies—G Suite, Google Maps, Google Voice, Google Express, and Gmail—involve any physical presence or employees within this District. *See, e.g.*, Declaration of Tyler Krause ¶ 3; Declaration of Joe

Data ¶¶ 3–4.[7]

### C.   Alternatively, The Court Should Transfer this Case to the Northern District of California Under 28 U.S.C. § 1406.

Where, as here, venue is improper, the "district court . . . shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). No salient "interest of justice" militates in favor of transferring, rather than dismissing, this suit for improper venue. *See Lowery v. Estelle*, 533 F.2d 265, 267 (5th Cir. 1976) (affirming dismissal, rather than transfer, for lack of venue where no bar would have precluded the plaintiff from refiling in a proper venue). But if this Court instead chooses to transfer the case to cure the venue defect, it should transfer the case to the Northern District of California for the reasons discussed above in Defendants' motion to transfer.

## VII.   <u>CONCLUSION</u>

For these reasons, the Court should transfer Plaintiff's claims against both Google and GPC to the Northern District of California or, in the alternative, dismiss Plaintiff's claims against Google and GPC for improper venue.


Dated: December 7, 2020                         Respectfully submitted,


                                                By: *<u>/s/ Zachary M. Briers with permission,</u>*
                                                    *<u>by Michael E. Jones</u>*
                                                    Michael E. Jones
                                                    Texas Bar No. 10929400
                                                    POTTER MINTON, PC
                                                    110 North College, Suite 500

---

[7] The Complaint notes that two third parties—uBreakiFix and Cynergy—repair Google devices, including Pixel phones. Compl. ¶¶ 64–67. But Plaintiff does not allege that these third parties are agents of Google, or that Google exercises any control over the services they offer. In addition, Plaintiff does not allege that Cynergy maintains any locations in this District: it identifies only a Cynergy location "in Grapevine, Texas," Compl. ¶ 67, which is in the Northern District of Texas.

Tyler, TX 75702
Telephone: (903) 597-8311
Facsimile: (903) 993-0846
mikejones@potterminton.com

OF COUNSEL:

Zachary M. Briers (*pro hac vice*)
Heather E. Takahashi (*pro hac vice*)
Vincent Y. Ling (*pro hac vice*)
Markus A. Brazill (*pro hac vice*)
Robin S. Gray (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
zachary.briers@mto.com
heather.takahashi@mto.com
vinny.ling@mto.com
markus.brazill@mto.com
robin.gray@mto.com

**ATTORNEYS FOR DEFENDANTS**
**GOOGLE LLC AND**
**GOOGLE PAYMENT CORP.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail.

Dated: December 7, 2020

/s/ Michael E. Jones
By:  Michael E. Jones

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document and all supporting declarations and exhibits thereto are being filed under seal pursuant to Local P.R. 2-2 and in addition Local Rule CV-5(a)(7)(B) wherein a motion to seal this document has previously been filed with the Court.

Dated: December 7, 2020

/s/ Michael E. Jones
By:  Michael E. Jones

## CERTIFICATE OF CONFERENCE

On December 7, 2020, pursuant to Local Rule CV-7(h), counsel Michael Jones, Zachary Briers, and Heather Takahashi for Defendants met and conferred with counsel Vincent Rubino for Plaintiff, and counsel for Plaintiff indicated on December 7, 2020, that Plaintiff is opposed to the relief sought by this Motion.

Dated: December 7, 2020

/s/ Michael E. Jones
By:  Michael E. Jones