**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| RFCYBER CORP., | Case No. 2:20-cv-00274-JRG |
| *Plaintiff,* | (Lead Case) |
| | <u>JURY TRIAL REQUESTED</u> |
| v. | |
| GOOGLE LLC, | |
| *Defendant.* | |
| | |
| RFCYBER CORP., | Case No. 2:20-cv-00335-JRG |
| *Plaintiff,* | (Member Case) |
| | <u>JURY TRIAL REQUESTED</u> |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC., | |
| *Defendants.* | |

**DEFENDANTS SAMSUNG ELECTRONICS CO., LTD.'S
AND SAMSUNG ELECTRONICS AMERICA, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     ISSUES PRESENTED.............................................................................................. 2

III.    THE ASSERTED PATENTS AND CLAIM CONSTRUCTION...................................... 2

IV.     STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................. 5

V.      RFCYBER'S INFRINGEMENT CONTENTIONS AND DR. JONES' INFRINGEMENT
        REPORT ................................................................................................................ 8

VI.     LEGAL STANDARDS ............................................................................................. 9

        A.      Summary Judgment ..................................................................................... 9

        B.      Direct Infringement...................................................................................... 9

        C.      Divided Infringement .................................................................................. 11

        D.      Indirect Infringement .................................................................................. 12

VII.    ARGUMENT .......................................................................................................... 13

        A.      There Is No Genuine Issue Of Material Fact That Samsung's Making, Selling,
                Offering For Sale, Distributing, Exporting and/or Importing The Accused Devices
                Cannot Directly Infringe the Asserted Method Claims ................................... 13

        B.      There Is No Genuine Issue Of Material Fact That Samsung's Sale, Offer For Sale,
                Import, Use Or Manufacture Of The Accused Devices *Without* Samsung Pay *Pre-
                Installed* Cannot Infringe Any Of The Asserted Claims ................................. 14

        C.      There Is No Genuine Issue Of Material Fact That The Accused Devices Lack At
                Least One Limitation From Each Asserted Claim Of The '218, '855 And '787
                Patents .................................................................................................. 14

                1.      The Accused Devices Lack an "E-purse" .................................................14

                2.      The Accused Devices Lack a "Fund Stored in the Emulator"...................18

        D.      There Is No Genuine Issue Of Material Fact That Samsung's Manufacture, Offer
                To Sell, Sale And/Or Importation Of The Accused Devices Does Not Constitute
                Infringement Of Claims 11 And 15 Of The '218 Patent or Claim 1 Of The '787
                Patent...................................................................................................... 19

        E.      There Is No Genuine Issue Of Material Fact That No Single Entity Performs Each
                and Every Method Step of Claim 8 of the '218 Patent, Claim 11 of the '787 Patent
                and/or Claim 10 of the '855 Patent ...................................................... 21

        F.      There Is No Genuine Issue Of Material Fact That Samsung Has Not Directly
                Infringed The Asserted Method Claims By "Using" The Accused Devices In The
                United States ......................................................................................... 25

G.     There Is Insufficient Evidence In The Record For The Trier Of Fact To Find That Samsung Has Induced Its Customers to Infringe the Asserted Claims ............... 28

H.     There Is Insufficient Evidence In The Record For The Trier Of Fact To Find That Samsung Has Contributorily Infringed the Asserted Claims............................... 29

VIII.   CONCLUSION............................................................................................................. 30

**TABLE OF AUTHORITIES**

**Cases**                                                                                        **Page(s)**

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
   501 F.3d 1307 (Fed. Cir. 2007)..................................................................1, 12, 28

*Agri-Labs Holding LLC v. Taplogic, LLC*,
   304 F. Supp. 3d 773 (N.D. Ind. 2018) ..................................................................30

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015)........................................................................11, 24

*Amarin Pharma, Inc. v. W. Ward Pharm. Int'l Ltd.*,
   407 F. Supp. 3d 1103 (D. Nev. 2019)....................................................................30

*Astornet Techs. Inc. v. BAE Sys., Inc.*,
   802 F.3d 1271 (Fed. Cir. 2015)..............................................................................12

*Blackbird Tech LLC v. ELB Elecs., Inc.*,
   2020 U.S. Dist. LEXIS 163889 (D. Del. Sept. 9, 2020) ........................................30

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,
   911 F.2d 670 (Fed. Cir. 1990)..................................................................................9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..................................................................................................9

*Commil USA, LLC v. Cisco Sys., Inc.*,
   135 S. Ct. 1920 (2015)......................................................................................12, 28

*Commil USA, LLC v. Cisco Sys., Inc.*,
   720 F.3d 1361 (Fed. Cir. 2013)..............................................................................29

*Deep9 Corp. v. Barnes & Noble, Inc.*,
   2012 WL 4336726 (W.D. Wash. Sept. 21, 2012) ..................................................11

*Dodots Licensing Sols. LLC v. Lenovo Holding Co.*,
   2018 U.S. Dist. LEXIS 213202 (D. Del. Dec. 19, 2018)........................................13

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006)........................................................................12, 29

*Ecolab, Inc. v. FMC Corp.*,
   569 F.3d 1335 (Fed. Cir. 2009)..............................................................................29

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*,
   845 F.3d 1357 (Fed. Cir. 2017)..............................................................................11

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010)................................................................10

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010)........................................................12, 29

*Grecia v. VUDU, Inc.*,
    2015 WL 538486 (N.D. Cal. Feb. 9, 2015) ............................................11

*Johnston v. IVAC Corp.*,
    885 F.2d 1574 (Fed. Cir. 1989)........................................................10, 14

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993)..............................................................10, 13

*Lyda v. CBS Corp.*,
    838 F.3d 1331 (Fed. Cir. 2016)................................................................11

*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*,
    690 F.3d 1354 (Fed. Cir. 2012)........................................................10, 26

*Midwest Energy Emissions Corp. v. Vistra Energy 6 Corp.*,
    2020 WL 3316056 (D. Del. June 18, 2020)............................................11

*Mikkelsen Graphic Eng'g Inc. v. Zund Am., Inc.*,
    2011 U.S. Dist. LEXIS 38270 (E.D. Wis. Apr. 7, 2011)........................29

*Mirror Worlds, LLC v. Apple, Inc.*,
    784 F. Supp. 2d 703 (E.D. Tex. 2011)..................................10, 26, 27

*Ormco Corp. v. Align Tech., Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006)........................................................10, 13

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016)................................................................12

*Ricoh Co. v. Quanta Computer Inc.*,
    550 F.3d 1325 (Fed. Cir. 2008)........................................................10, 13

*Smith & Nephew, Inc. v. Arthrex, Inc.*,
    2010 U.S. Dist. LEXIS 10257 (E.D. Tex. Feb. 5, 2010) ........................10

*Synchronoss Techs. v. Dropbox, Inc.*,
    987 F.3d 1358 (Fed. Cir. 2021)................................................................20

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    534 F. Supp. 2d 849 (W.D. Wis. 2008) ..................................................17

*Travel Sentry, Inc. v. Tropp*,
    877 F.3d 1370 (Fed. Cir. 2017)...........................................................................11

*Wi-LAN USA, Inc. v. Apple Inc.*,
    830 F.3d 1374 (Fed. Cir. 2016)...........................................................................17

## I.      INTRODUCTION

Pursuant to Fed. R. Civ. P. 56, Defendants Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. (collectively, "Samsung") respectfully move for partial summary judgment of non-infringement of U.S. Patent Nos. 8,118,218, 8,448,855, 9,189,787 and 9,240,009 (collectively, the "Asserted Patents").

Plaintiff RFCyber Corp. ("RFCyber") is accusing Samsung of infringing claims 1, 8, 11 and 15 of the '218 patent, claim 10 of the '855 patent, claims 1, 2, 6, 8 and 11 of the '787 patent, and claims 14 and 16 of the '009 patent (collectively, the "Asserted Claims").  Although RFCyber would like the Court to believe that the Asserted Patents cover virtually any type of payment made via a mobile device or wearable, that is simply not the case.  To the contrary, the Asserted Patents claim very limited ways of conducting such transactions with very specific equipment and components.  In fact, all of the claims of the '218, '855 and '787 patents require an "e-purse," which is lacking in the accused mobile phones and smartwatches (the "Accused Devices") under the Court's *Markman* Order.

Furthermore, claim 10 of the '855 patent and claim 11 of the '787 patent have been drafted in such a way that no single entity (neither Samsung nor any user of the Accused Devices) is capable of performing each and every claim limitation.  Moreover, as demonstrated below, there is simply no evidence – beyond mere speculation – that Samsung has performed each and every step of any of the asserted method claims.[1]  Further, there is no evidence that Samsung "knowingly induced infringement and possessed specific intent to encourage another's infringement."  *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007).  Moreover, the Accused Devices have substantial non-infringing uses and, thus, there can be no contributory infringement.

---

[1] Asserted claims 1 and 8 of the '218 patent, claim 10 of the '855 patent and claim 11 of the '787 patent are all method claims (collectively, the "Asserted Method Claims").

For all of these reasons, Samsung respectfully requests that the Court grant its motion for summary

judgment of non-infringement.

## II.    ISSUES PRESENTED

1.    Whether Samsung's making, selling, offering to sell, distributing, exporting from and/or importing into the United States the Accused Devices can constitute infringement of the Asserted Method Claims.

2.    Whether Samsung's making, selling, offering to sell, distributing, exporting from and/or importing into the United States the Accused Devices *without* Samsung Pay or Samsung Pay Cash *pre-loaded* can infringe any of the Asserted Claims.

3.    Whether the Accused Devices lack at least one limitation from each Asserted Claim of the '218, '855 and '787 patents and, thus, cannot infringe those patents.

4.    Whether Samsung's making, selling, offering to sell, distributing, exporting from and/or importing into the United States the Accused Devices can constitute infringement of system claims 11 and 15 of the '218 patent or claim 1 of the '787 patent.

5.    Whether asserted method claim 8 of the '218 patent, claim 11 of the '787 patent and/or claim 10 of the '855 patent can be infringed when no single entity performs each and every step of the claimed method.

6.    Whether mere speculation that Samsung has used the Accused Devices in an infringing manner in the United States is sufficient for the trier of fact to find direct infringement of the Asserted Method Claims.

7.    Whether there is sufficient evidence in the record for the trier of fact to conclude that Samsung induces its customers to infringe the Asserted Claims.

8.    Whether there is sufficient evidence in the record for the trier of fact to conclude that Samsung contributorily infringes the Asserted Claims.

## III.   THE ASSERTED PATENTS AND CLAIM CONSTRUCTION

The '218, '855, and '787 patents share a common specification and describe an e-purse on

a smart card in a mobile phone or other portable device, which allows the device to conduct secure

payment transactions.  ('218 patent at 1:6-22, 1:34-38, Fig. 2).  The patents explain that "[s]ingle

functional cards [i.e., e-purses] have been successfully used in enclosed environments such as

transportation systems" and highlight the single functional MIFARE card as a widely used e-purse.

(*Id.* at 1:13-22).  However, "such enclosed systems are difficult to be expanded into other areas such as e-commerce and m-commerce because stored values and transaction information are stored" in a way that is "protected by a set of keys," and "the keys need to be delivered to the card for authentication before data can be accessed during a transaction."  (*Id.* at 1:23-29).  Thus, there is "a need for a mechanism in devices, especially portable devices, functioning as an electronic purse (e-purse) to be able to conduct transactions over an open network with a payment server without compromising security."  (*Id.* at 1:34-38).

The patents' purported solution is to provide "a mechanism to be embedded" in the portable device to function as an e-purse and provide the necessary security.  (*Id.* at 2:42-46).  That "mechanism" is a smart card.  (*Id.* at 2:10-41).  The smart card's operating system "control[s] the access to the smart card (e.g., an installation of external applications into the smart card)."  (*Id.* at 4:47-50).  The patents explain that "multiple application smart cards" can also come "pre-loaded with an emulator" allowing the multi-application smart card to mimic (or "emulate") a single functional card.  (*Id.* at 2:14, 2:27-28, 3:51-60, 4:62-64, Fig. 2).

The '009 patent is a continuation-in-part of the '218 patent and describes mobile devices with "secure elements" that can securely host "an application such as an electronic purse" for conducting secured transactions over a network.  ('009 patent at 1:18-24).

The Court conducted its *Markman* hearing on October 27, 2021.  At the hearing, both sides argued over the meaning of the following language from the applicant's Response to Final OA from the prosecution of the '218 patent in which it tried to distinguish its alleged invention from the prior art "Atsmon" reference (U.S. Patent No. 6,607,136):

> [T]he Applicant submits [the] Shmueli [reference] could not be modified with [the] Atsmon [reference] or such modification would render Shmueli inoperable.  The Applicant wishes to further point out that Atsmon describes entirely about e-wallet. It is commonly known in the art that e-wallet is not the same as e-purse.  An e-

wallet system has a user credit-card and personal info at the backend, an e-card in the e-wallet system is used as an identity card for logging in into the system. When shopping, the e-card can be used to identify the user to retrieve the info and submit the info to the merchant site. Evidently, an e-purse in the instant application describes about electronic money in a local portable device.

(Ex. 1,[2] 12/31/10 Resp. at 9).[3]   During the hearing, RFCyber's counsel argued that "Atsmon is about putting the information such as a *credit card on a back-end device, which is remote*, and [the claimed] *e-purse is about storing that information on a local device*."  (Ex. 2, Hearing Tr. at 27).[4] In other words, the claimed "e-purse" must store the user's financial information (such as credit card information) *locally*.  Furthermore, RFCyber distinguished the prior art Atsmon reference from the claimed invention on this ground multiple times:

- "Now, in response to that argument, the applicant explained that Atsmon doesn't install and personalize an e-purse applet because *all the financial information* for coupons, special sales, and other information, as the Court can see from this slide, *is done on a remote computer* called a base station.  The only information that gets downloaded to the card is software to access the remote computer.  So the information about an account which would be necessary to perform a transaction is not on the card in Atsmon, but it's on a base station computer that is remote from the card.  So moving on to the portion cited by Defendant, *the applicant goes on to explain that the system of Atsmon that stores financial information on the back end is considered an e-wallet, which is different from an e-purse, where the information about electronic money is stored locally.  That's the distinction.*"  (*Id.* at 21).

- "So with respect to the supposed disclaimer, the distinction that was being drawn is that Atsmon isn't the system here because Atsmon is not an e-purse.  Atsmon is an e-*wallet, which something different, and it's different because in an e-purse, the methods of payment are stored on the local device.  And so one can go and use a POS system, what they call e-commerce in the specification, to do a transaction on the user side without the user's device having to go to another device through the Internet in order to obtain information about the payment methods.  That's an e-wallet.  And so what he was saying there is that's not what we do because Atsmon*

---

[2] Unless otherwise indicated, all Exhibits are attached to the Declaration of Allan A. Kassenoff In Support of Samsung's Motion For Summary Judgment of Non-Infringement.

[3] Atsmon discloses "[a]n e-wallet is a convenient application that allows the user to shop and purchase items on the web with relative ease.  Because the user had registered with the proper personal information such as name, address, phone number, credit card number, expiration date, and the like, the user's shopping experience is a painless and positive one.  Indeed, this information may have already been entered by the card's provider."  (Ex. 3 at 68:53-60).

[4] All emphasis is added unless otherwise indicated.

is about putting the information such as a credit card on a back-end device, which is remote, and an e-purse is about storing that information on a local device . . . ." (*Id.* at 26-27).

On November 17, 2021, the Court issued its Claim Construction Memorandum and Order (the "*Markman* Order") (Dkt. 147) and construed "e-purse" as "software that stores electronic financial information in a local device."[5]  In rejecting Samsung's proposed construction of "e-purse" – an "application that stores electronic money locally (i.e., in the user's portable device)" – the Court expressly adopted RFCyber's explanation of the '218 patent's prosecution history:

> At the October 27, 2021 hearing, Plaintiff argued that in the prosecution history relied upon by Defendants, the patentee distinguished accessing information remotely (as opposed to storing information locally) and did not limit the term "e-purse" in the manner proposed by Defendants. . . . The patentee thus distinguished Shmueli and Atsmon based on the claimed invention using information stored locally rather than retrieving information from somewhere else.

(*Markman* Order at 15).  Critically, Samsung Pay stores all financial information on a remote server – and not on the Accused Devices themselves.  In other words, the Accused Devices function exactly the way that RFCyber's counsel told this Court is ***not*** covered by the Asserted Patents.

## IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS

RFCyber filed its Complaint on October 16, 2020, alleging that various Samsung mobile phones and smart watches "running Samsung Pay and/or Samsung Pay Cash" directly and indirectly infringe the Asserted Patents.  (Complaint, ¶ 16; *see also id*., ¶¶ 21, 32, 33, 38, 48, 49, 54, 66, 67, 72, 83, 84).  The Complaint additionally alleges that the Asserted Claims (including the Asserted Method Claims) are infringed "by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods

---

[5] In addition to construing "e-purse," the Court construed the remaining terms in dispute, none of which are important to the instant motion.

covered by one or more claims of the" Asserted Patents. (*Id.*, ¶¶ 21, 38, 54, 72). Samsung Pay is a mobile payment service which can be used to make purchases with a Samsung mobile phone or smart watch. ██████████████████████████████████████████ (*See, e.g.,* Ex. 4, Supplemental Expert Report of Dr. Mark T. Jones Regarding Infringement of U.S. Patent Nos. 8,118,218, 8,448,855, 9,189,787 and 9,240,009, dated November 12, 2021 ("Infringement Report") at 65-69). If Samsung Pay does not come pre-loaded, the user can download it from the Google Play or Samsung Galaxy store.[6]



---

[6] Ex. 5, https://www.samsung.com/ca/apps/samsung-pay/.

[7] ██████████████████████████████████████████ (Ex. 6, Min Soek Lee Depo Tr. at 56:5-22, 86:25-87:8).

[8] ██████████████████████████████████████████ (*See, e.g.,* SAMSUNG00117711-888 (Ex. 8), SAMSUNG00117889-976 (Ex. 9)).

[9] *See, e.g.,* Ex. 10, https://www.emvco.com/wp-content/plugins/pmpro-customizations/oy-getfile.php?u=wp-content/uploads/documents/EMVCo-Payment-Tokenisation-Specification-Technical-Framework-v2.3.pdf (EMV Payment Tokenisation Specification (Version 2.3, Oct. 2021)) at 12 (defining the "Token Vault" as "[a] repository that maintains the established Payment



Ex. 12, https://security.samsungmobile.com/doc/Press_Guidance_Samsung_Pay.pdf, at 1 ("Samsung Pay does not store credit or debit card numbers.")).

(*See, e.g.,* Ex. 11 at 535

(*Id.* at 463, 486).

(Ex. 7 at 749-750).  "By substituting the real card number with a token, Samsung Pay avoids putting the real card numbers at risk of theft and misuse."  (Ex. 12 at 1). Furthermore,

(Ex. 11 at 488).

When a user wants to make a purchase, Samsung Pay will send the merchant's point of sale ("POS") terminal the token, the application transaction counter (or "ATC") and a

---

Token / Token Expiry Date affiliation with the underlying PAN / PAN Expiry Date and includes Payment Token related data").
[10] Tokens are also referred to as "digital tokens."

"cryptogram."  (Ex. 12 at 1).  "The ATC is a counter that is updated for every transaction.  Its purpose is to help ensure that the same transaction information cannot be replayed to make multiple purchases."  *Id.*  "The cryptogram is an authentication code generated using, at a minimum, a secret key, the digital token and the ATC. Cryptograms serve to validate that the transaction information has not been modified and that it was generated by the expected user's handset."  *Id.* [11]  "The cryptograms are used to tie an ATC to a digital token and help to prevent modification of the ATC. This in turn helps to prevent transaction information used for one purchase from being reused for multiple purchases."  *Id.*

███████████████████████████████████████████

███████████████████████████████████████████

███████████████    (*See, e.g.,* Ex. 11 at 473, 476, 493, 503, 512; Ex. 7 at 729).  Because the token and cryptogram (i) do not contain any financial information, (ii) are encrypted, and (iii) can only be mapped to a PAN with information stored in the Token Vault, the token and cryptogram do not need to be sent to the POS through a protected channel.  To the contrary, they are sent over an unprotected/insecure channel.

## V.    RFCYBER'S INFRINGEMENT CONTENTIONS AND DR. JONES' INFRINGEMENT REPORT

RFCyber served its Disclosure of Asserted Claims and Infringement Contentions ("Original Infringement Contentions") on May 12, 2021.  On September 17, 2021, RFCyber served supplemental claim charts ("Supplemental Infringement Contentions"), which were largely the same as the Original Infringement Contentions, but added citations to Samsung's source code.  On November 8, 2021, RFCyber served the Expert Report of Dr. Mark T. Jones Regarding Infringement of U.S. Patent Nos. 8,118,218, 8,448,855, 9,189,787 and 9,240,009.  Four days later,

---

[11] Like the token, the secret key is generated by the card network/TSP.  (Ex. 12 at 1).

on November 12, 2021, RFCyber served the Supplemental Expert Report of Dr. Mark T. Jones

Regarding Infringement (Ex. 4).

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████. (Infringement Report at 65-69).  Similarly,

RFCyber asserted in its Complaint that "[t]he current and previous versions of Samsung Pay and

devices running Samsung Pay, *alone and together*, are non-limiting instances of the Accused

Products."  (Complaint, ¶ 16).

## VI.     LEGAL STANDARDS

### A.     Summary Judgment

A grant of summary judgment is proper if the pleadings and evidence show that "there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c));

*see also C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990)

("Summary judgment is as appropriate in a patent case as it is in any other case.").  When the

summary judgment movant demonstrates the absence of a genuine dispute over any material fact,

the burden shifts to the non-movant to show there is a genuine factual issue for trial.  *Celotex*, 477

U.S. at 323-24.

### B.     Direct Infringement

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention,

within the United States or imports into the United States any patented invention during the term

of the patent therefor, infringes the patent."  35 U.S.C. § 271(a).  "To establish infringement of a

patent, every limitation set forth in a claim must be found in an accused product or process exactly

or by a substantial equivalent." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989).[12]

"When a claim limitation is not present in an accused device, either literally or under the doctrine of

equivalents, the court must grant summary judgment of non-infringement." *Smith & Nephew, Inc. v.*

*Arthrex, Inc.*, 2010 U.S. Dist. LEXIS 10257, at \*6 (E.D. Tex. Feb. 5, 2010) (citing *Warner-*

*Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997)).

"To infringe a method claim, *a person* must have practiced all steps of the claimed

method." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010) (citation

omitted).   In other words, "[a] method claim is directly infringed only by one practicing the

patented method." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993); *see also Meyer*

*Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012) ("[D]irect

infringement of a method claim requires a showing that every step of the claimed method has been

practiced."); *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 713 (E.D. Tex. 2011), *aff'd*,

692 F.3d 1351 (Fed. Cir. 2012) ("Actual practice of the specific claim steps is required to infringe

the asserted method claims.").

Furthermore, it is well-settled that "[m]ethod claims are only infringed when the claimed

process is performed, not by the sale of an apparatus that is capable of infringing use." *Ormco*

*Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006); *see also Joy Techs.*, 6 F.3d at

773 ("The law is unequivocal that the sale of equipment to perform a process is not a sale of the

process within the meaning of section 271(a)."); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d

1325, 1335 (Fed. Cir. 2008) ("[A] party that sells or offers to sell software containing instructions

to perform a patented method does not infringe the patent under § 271(a).").

---

[12] Dr. Jones does not assert that any of the claim limitations that are relevant to the instant motion
is met by the doctrine of equivalents.

C.     **Divided Infringement**

For method claims, "[d]irect infringement under § 271(a) occurs where all steps . . . are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). Under a divided or joint infringement theory, a defendant will be held responsible for third parties' infringement where the defendant directs or controls those third parties' performance. *See id.* Divided or joint infringement applies only to method claims. *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016).

Sufficient direction or control occurs where the alleged infringer "'conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method' and 'establishes the manner or timing of that performance.'" *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1376 (Fed. Cir. 2017). While "conditioning" is not limited to "legal obligations or technological prerequisites," *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1367 (Fed. Cir. 2017), "mere guidance or instruction is insufficient . . . ." *Travel Sentry*, 877 F.3d at 1379 (quotation omitted). And the mere existence of some contractual relationship is not enough unless the contract "impose[s] an obligation on the allegedly 'controlled' party to perform the infringing steps." *Grecia v. VUDU, Inc.*, 2015 WL 538486, at *4 (N.D. Cal. Feb. 9, 2015); *see also Deep9 Corp. v. Barnes & Noble, Inc.*, 2012 WL 4336726, at *12 (W.D. Wash. Sept. 21, 2012), *aff'd*, 504 F. App'x 923 (Fed. Cir. 2013).

Ultimately, what is significant is whether the defendant has "'delineat[ed] the steps' that customers would have to perform 'if [they] wish[ed] to use [defendant's] product.'" *Eli Lilly*, 845 F.3d at 1367 n.5 (citation omitted); *see also Travel Sentry*, 877 F.3d at 1380. "The 'direction or control' test requires the controlling party to be, in effect, the 'mastermind' of the entire process." *Midwest Energy Emissions Corp. v. Vistra Energy 6 Corp.*, 2020 WL 3316056, at *9 (D. Del. June 18, 2020), report and recommendation adopted, 2020 WL 8265330 (D. Del. July 15, 2020).

11

### D.     Indirect Infringement

To establish a claim for induced infringement, a plaintiff must demonstrate "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *ACCO Brands*, 501 F.3d at 1312 (citation omitted); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016) ("To prove inducement of infringement, the patentee must [] show that the accused inducer took an affirmative act to encourage infringement") (quoting *Astornet Techs. Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1279 (Fed. Cir. 2015)). Additionally, "liability for induced infringement can only attach if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)).  In other words, "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).

To establish contributory infringement, the patent owner must show: "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010) (citation omitted).  Also, "[l]ike induced infringement, contributory infringement requires knowledge of the patent in suit *and knowledge of patent infringement.*" *Commil*, 135 S. Ct. at 1926.

## VII.    ARGUMENT

### A.    There Is No Genuine Issue Of Material Fact That Samsung's Making, Selling, Offering For Sale, Distributing, Exporting and/or Importing The Accused Devices Cannot Directly Infringe the Asserted Method Claims

According to RFCyber's Complaint, the Asserted Claims (including the Asserted Method Claims) are infringed "by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the" Asserted Patents.  (Complaint, ¶¶ 21, 38, 54, 72).  To the extent RFCyber is alleging that the Asserted *Method* Claims can be infringed by Samsung's making, selling, offering for sale, distributing, exporting from and/or importing into the United States the Accused Devices, that is contrary to the law.  Specifically, it is well-settled that "[m]ethod claims are *only* infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use." *Ormco*, 463 F.3d at 1311; *see also Joy Techs.*, 6 F.3d at 773 ("The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)."); *Ricoh*, 550 F.3d at 1335 ("[A] party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a).").

In fact, the District Court of Delaware addressed this identical issue.  Specifically, in *Dodots Licensing Solutions LLC v. Lenovo Holding Co.*, the defendants filed a motion to dismiss plaintiff's claims for direct infringement of the asserted method claims.  2018 U.S. Dist. LEXIS 213202 (D. Del. Dec. 19, 2018).  Citing the "well-established" law that method claims can *only* be infringed where each step has been performed, the Court held that "making, selling, offering to sell or importing the Accused Devices cannot – as a matter of law – constitute direct infringement of the [asserted method claims] within the meaning of § 271(a)."  *Id.* at *6.  Accordingly, to the extent that RFCyber is alleging that Samsung is infringing the Asserted Method Claims by making, selling, offering for sale, distributing, exporting from and/or importing into the United States the

Accused Devices, the Court should grant this portion of Samsung's motion for summary judgment of non-infringement.

> **B.    There Is No Genuine Issue Of Material Fact That Samsung's Sale, Offer For Sale, Import, Use Or Manufacture Of The Accused Devices *Without* Samsung Pay *Pre-Installed* Cannot Infringe Any Of The Asserted Claims**

It is well-settled that "[t]o establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent." *Johnston*, 885 F.2d at 1577.  It is undisputed that there can be no infringement if Samsung Pay is never installed in the accused Samsung mobile phones and wearables.  As explained by Dr. Jones,

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████    It is undisputed that only the *user* – and not Samsung – can install Samsung Pay in those instances.  (*Id.* at 293 ██████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████.  Because Samsung's sale, offer for sale, import, use and/or manufacture of any device *without* Samsung Pay *pre-installed* necessarily does not meet each and every claim limitation of any of the Asserted Claims, the Court should grant this portion of Samsung's motion for summary judgment of non-infringement.

> **C.    There Is No Genuine Issue Of Material Fact That The Accused Devices Lack At Least One Limitation From Each Asserted Claim Of The '218, '855 And '787 Patents**

> **1.    The Accused Devices Lack an "E-purse"**

All of the Asserted Claims of the '218, '855 and '787 patents require an "e-purse."  (*See, e.g.,* claim 1, '218 patent ("A method for providing an e-purse, the method comprising: providing a portable device including or communicating with a smart card pre-loaded with an emulator

14

configured to execute a request from an e-purse applet and provide a response the e-purse applet is configured to expect . . . .")).  The Court has construed "e-purse" as "software that stores electronic financial information in a local device."

In Samsung Pay, *no* "financial information" – e.g., the credit card information – is stored locally on the Accused Devices.  (*See supra* at Sec. IV).  Rather, all financial information is stored *remotely* in the token service provider's Token Vault.  (*See id.*)  Apparently recognizing that the Accused Devices do not store "financial information" locally, RFCyber attempted to save its infringement case by arguing that certain items are in fact stored on the local device.  Specifically, according to Dr. Jones, ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ (Infringement Report at 167).  Although Dr. Jones is correct that the Accused Devices locally store tokens as well as the information used to generate cryptograms – namely, the token, secret key and ATC – no reasonable trier of fact could possibly conclude that any of these items are "financial information."

First, tokens are not financial information – they are a substitute (or proxy) for financial information.  "By substituting the real card number with a token, Samsung Pay avoids putting the real card numbers at risk of theft and misuse."  (Ex. 12 at 1).  ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ (Ex. 11 at 492-93).  Moreover, Dr. Jones expressly recognized in his report that ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████

15



(Infringement Report at 99

(Ex. 11 at 485-88; *see also id.* at 504).

Additionally, the tokens generated by the TSPs for use with Samsung Pay serve the same purpose as (and are virtually identical to) the "e-card" from Atsmon. Specifically, as RFCyber told the Patent Office during prosecution, Atsmon's "e-wallet system has a user credit-card and personal info at the backend, an e-card in the e-wallet system is used as an identity card for logging in into the system. When shopping, the e-card can be used to identify the user to retrieve the info and submit the info to the merchant site." (Ex. 1, 12/31/10 Resp. at 9). That is the exact purpose of the token – like Atsmon's e-card, the token is used by the TSP to "identify the user to retrieve the info [i.e., the user's credit card information] and submit the info to the merchant site." (*Id.*) In arguing that the Accused Devices have an e-purse – despite operating virtually identically to what the patent applicant argued is *not* an "e-purse" – RFCyber is violating the well-established principle of law that "[a] patentee cannot make representations about claim language during prosecution to avoid prior art and then escape these representations when trying to show infringement." *Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1390 (Fed. Cir. 2016).

16

RFCyber's counsel's arguments at the *Markman* Hearing likewise preclude the very argument it is making now.   As explained above (*see supra* at Sec. III), RFCyber's counsel expressly argued that "Atsmon is about putting the information such as a *credit card on a back-end device, which is remote*, and [the claimed] *e-purse is about storing that information on a local device*."   (Ex. 2, Hearing Tr. at 27; *see also id.* at 21 (arguing that Atsmon "stores financial information on the back end is considered an e-wallet, which is different from an e-purse, where the information about electronic money is stored locally"); *Markman* Order at 15 ("[T]he patentee . . . distinguished Shmueli and Atsmon based on the claimed invention using information stored locally rather than retrieving information from somewhere else.")).   And, having argued at the hearing that the claimed "e-purse" must store the user's financial information (e.g., credit card information) locally, "Plaintiff is bound by this argument; it cannot change it midstream."  *Taurus IP, LLC v. DaimlerChrysler Corp.*, 534 F. Supp. 2d 849, 879 (W.D. Wis. 2008) (holding that plaintiff was bound by the arguments its counsel made at the *Markman* hearing regarding the scope of a claim term), *aff'd*, 726 F.3d 1306 (Fed. Cir. 2013).

████████████████████████████████████████████████

████████████      The secret key is for encryption purposes in order to generate the cryptogram while the ATC (the application transaction counter), as its name implies, simply keeps track of (i.e., counts) of each transaction.  (*See, e.g.,* Ex. 12 at 1).  No reasonable trier of fact could conclude that either of these things constitutes "financial information."

In short, because the financial information is stored remotely in the TSP's Token Vault, the Accused Devices lack the claimed "e-purse."   Accordingly, the Court should grant Samsung's motion for summary judgment of non-infringement of the '218, '855 and '787 patents.

2.      **The Accused Devices Lack a "Fund Stored in the Emulator"**

All of the Asserted Claims of the '787 patent require "[a] portable device for commerce"

which includes "an emulator" where there is a "*fund stored in the emulator*."[13]  As demonstrated

above, the Accused Devices do not store any financial information – let alone a "fund" (i.e., a pool

of money) within them. ███████████████████████████████████████████████

███████████████████████████████████████████████[14] █████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████ █████████████████████████████████████████

████████████████████████ █████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████

---

[13] Claims 1, 2, 6 and 8 are system claims requiring "[a] portable device for commerce" while claim
11 is a method claim, requiring "[a] method for a portable device for commerce."

[14] ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████



Accordingly, because the Accused Devices lack a "fund stored in the emulator," the Court should grant Samsung's motion for summary judgment of non-infringement of the '787 patent on this independent ground.

> **D.    There Is No Genuine Issue Of Material Fact That Samsung's Manufacture, Offer To Sell, Sale And/Or Importation Of The Accused Devices Does Not Constitute Infringement Of Claims 11 And 15 Of The '218 Patent or Claim 1 Of The '787 Patent**

Claim 11 of the '218 patent recites a "system for providing an e-purse" where the system includes, *inter alia*, a portable device, a payment server and an e-purse SAM.  Specifically, the claim recites, in pertinent part, as follows:

> 11[p]. A *system* for providing an e-purse, the system comprising:
> 11[a]. a *portable device* . . .,
> 11[g]. the *payment server* associated with an issuer authorizing the e-purse applet; and
> 11[h]. the *e-purse SAM* configured to enable the e-purse applet, wherein an SAM is behind the payment server and in communication with the e-purse applet when the e-purse applet is caused to communicate with the payment server via the midlet.

According to RFCyber, Samsung directly infringes claim 11 (and claim 15, which depends from claim 11) by selling, offering for sale, importing, using and making the Accused Devices. (Infringement Report at 285).  However, there is no genuine issue of material fact that Samsung does not sell, offer for sale, import, or make the *complete* system.  ████████████████

████████████████████████████████████████████

████████████████████   (Ex. 15, Infringement Report, Appendix E at 164 ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████   Because Samsung does not sell, offer for sale, import, or make the claimed "payment server" or "SAM," RFCyber's infringement allegations fail.  *See, e.g., Synchronoss Techs. v. Dropbox, Inc.*, 987 F.3d 1358, 1365 (Fed. Cir. 2021) (after concluding that the asserted system claims require both hardware and software, holding that "[b]ecause Dropbox does not provide its customers with any hardware in conjunction with its accused software, Dropbox does not make, sell, or offer for sale the complete invention").

RFCyber's infringement allegations with respect to claim 1 of the '787 patent fail for the same reason.  Specifically, claim 1 recites, in pertinent part, as follows:

> 1[p]. A portable device for commerce, the portable device comprising:
> 1[a]. an emulator . . . and
> 1[b]. an e-purse applet . . .
> 1[c]. *wherein both of the emulator and e-purse applet are already personalized* via a personalization process . . . .

According to RFCyber, Samsung is infringing this claim by selling, offering for sale, importing, using and making the Accused Devices ████████████████████

████████████████████████████████████████████

████████████████████████████████



(Ex. 13, 12/9/2021 Jones Dep. Tr. at 159:25-160:12).



(*Id.* at 160:13-161:14).

. In short, Samsung's manufacture, sale, offer for sale and import of the Accused Devices does not and cannot infringe claim 1 of the '787 patent as the claim limitation "wherein both of the emulator and e-purse applet are already personalized via a personalization process" is not met. Accordingly, the Court should grant summary judgment of non-infringement of claims 11 and 15 of the '218 patent as well as claim 1 of the '787 patent.

**E.     There Is No Genuine Issue Of Material Fact That No Single Entity Performs Each and Every Method Step of Claim 8 of the '218 Patent, Claim 11 of the '787 Patent and/or Claim 10 of the '855 Patent**

Claims 8 of the '218 patent, claim 11 of the '787 patent and claim 10 of the '855 patent cannot be performed by a single entity and, thus, cannot be infringed absent a finding of divided

infringement.  Claim 7 of the '218 patent (from which asserted claim 8 depends) itself depends

from claim 1 and provides as follows:

> 7[p]. The method as recited in claim 1, further comprising:
> 7[a]. initiating a request from the e-purse after valid personal identification numbers are
> entered and accepted on the portable device;
> 7[b]. sending a request by the midlet to the e-purse applet that is configured to compose a
> response to be sent to the midlet . . . .

To the extent that these two steps are performed at all, they are done by two different

entities.  Specifically, ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████

██        ██        ████████████████████████████████

██        ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████

Claim 11 of the '787 patent recites, in pertinent part, as follows:

> 11[p]. A method for a portable device for commerce, the method comprising:
> 11[a]. loading a smart card module with an emulator . . .;
> 11[c]. performing near field communication (NFC) via a first interface with a reader to
> perform electronic commerce . . .; and
> 11[d]. performing mobile commerce via a second interface . . . .

Like claim 7 of the '218 patent, multiple entities perform the method steps of claim 11 of

the '787 patent.  ████████████████████████████████████████

████████████████████

██        ████████████████████████████████████



(Ex. 14, 12/10/2021 Jones Dep. Tr. at 287:15-19).  But, it cannot be disputed that the *user* of the

Accused Devices performs the transactions (i.e., limitations 11[c] and 11[d]). ███████████

█████████████████████████ (*See id.* at 287:20-288:12).

Finally, claim 9 of the '855 patent (from which asserted claim 10 depends) recites, in

pertinent part, as follows:

> 9[p]. A method for funding an e-purse, the method comprising:
> 9[a]. receiving a request from a portable device;
> 9[b]. verifying the request with an account in a bank across a network;
> 9[c]. initiating a fund transfer request by a server with a financial institution administrating
> the e-purse when the request is successfully verified;
> 9[d]. sending commands to the portable device to cause an emulator in the portable device
> to update a transaction log in the portable device after an authenticity of the commands is
> verified by a midlet in the portable device . . . .

According  to  Dr.  Jones,

---

[15] "Stripe is a technology company that builds economic infrastructure for the internet."  (Ex. 17
(https://stripe.com/about) at 1).



. (*Id.*, Ex. 16, Infringement Report, Appendix F at 7, 18, 21).

In short, none of these claims can be infringed as no single actor performs all of the method steps. *See Akamai Techs.*, 797 F.3d at 1022 ("Direct infringement under § 271(a) [for a method claim] occurs where all steps . . . are performed by or attributable to a single entity."). Under a divided or joint infringement theory, Samsung will be held responsible for a third party's infringement *only* where Samsung directs or controls that third party's performance. *See id.* In the instant case, Samsung does not control the user of the Accused Devices

or third parties (who allegedly perform limitation 9[c] of the '855 patent). In fact, Dr. Jones failed to even include an opinion on divided infringement in his Infringement Report and admitted as much at his deposition:



(Ex. 13, 12/9/2021 Jones Dep. Tr. at 163:24-164:9). Because claim 8 of the '218 patent, claim 11 of the '787 patent and claim 10 of the '855 patent cannot be performed by a single entity, the Court should grant summary judgment of non-infringement of these claims.

[16] https://developer.samsung.com/internet/android/web-payments-integration-guide.html.

**F.      There Is No Genuine Issue Of Material Fact That Samsung Has Not Directly Infringed The Asserted Method Claims By "Using" The Accused Devices In The United States**

RFCyber is also alleging that Samsung directly infringes the Asserted Method Patents by *using* the Accused Devices.  (*See* Infringement Report at 285-86 ███████████████████ ██████████████████████████████████████████████████████████████.  But, RFCyber cites no evidence that *any* Samsung employee has actually performed all of the claimed method steps in the United States.  Rather, Dr. Jones states in a conclusory fashion that ████████ ██████████████████████████████████████████████████████████ (Infringement Report at 291).  Instead of citing any Samsung deposition testimony, Dr. Jones ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████

(Ex. 13, 12/9/2021 Jones Dep. Tr. at 161:21-163:17).

None of the documents ████████████████, however, evidence any testing by Samsung of the Accused Devices (let alone of the Samsung Pay feature) or demonstrations for marketing purposes.  To the contrary, the cited documents are in large part manuals, instructions, product specifications, Samsung Pay overviews, and a list of devices compatible with Samsung Pay.  Presumably, Dr. Jones is assuming that Samsung tested the Accused Devices when it prepared these documents and that it did so in the United States.  However, assumptions of use are insufficient as a matter of law.  Specifically, the Federal Circuit explained that the Northern District of Illinois erroneously granted the plaintiff's motion for summary judgment of infringement which was based upon the same type of infringement assumptions that Dr. Jones presumably made:

> In its decision granting [Plaintiff] summary judgment with respect to the Version 2 frothers, the district court rejected [Defendant's] argument that [Plaintiff] failed to prove direct infringement.  Specifically, the court found it unbelievable that "an established company such as [Defendant] would have placed Version 2 and later Version 3 on the market for public sale, and would have kept those products on the market for substantial periods of time, without having first confirmed for itself that each product would perform its allotted task . . . ."  *In other words, the court assumed that [Defendant] must have tested its products.  Given this assumption, the court concluded that [Defendant's] use of the '122 Patent method "has been established as a matter of law."*

*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1370 (Fed. Cir. 2012) (citations omitted).  The Federal Circuit reversed the district court, "find[ing] it troubling that the district court based its direct infringement analysis on what it assumed happened, rather than on actual evidence of record.  This assumption contradicts our well-established law that a patentee must prove infringement by a preponderance of the evidence."  *Id.*

This Court has also considered – and rejected – similar assumptions of infringement in *Mirror Worlds, LLC v. Apple, Inc.*, when it granted Apple's motion for judgment as a matter of

26

law of no direct infringement.  784 F. Supp. 2d 703 (E.D. Tex. 2011), *aff'd*, 692 F.3d 1351 (Fed.

Cir. 2012).  Specifically, in that case, Mirror Worlds made the following arguments to the Court

following a jury verdict of direct infringement of the asserted method claims:

> [I]t is undisputed that Apple developed and sold the accused
> products; therefore, it was reasonable for the jury to infer that Apple
> necessarily tested the accused products and performed the patented
> steps.
>
> \*       \*       \*
>
> At the post-trial hearing, Mirror Worlds stated it is "disingenuous"
> for Apple to argue that Mirror Worlds failed to prove direct
> infringement.  Mirror Worlds protests that, with Apple's
> development, marketing, and testing of the features, it is hard to
> imagine that Apple and its customers did not use the accused
> [features].

*Id.* at 712, 715.

Judge Davis, however, rejected both of these arguments, concluding as follows:

> Not only is it legally insufficient to show direct infringement of the
> method claims through Apple's sales, *it is insufficient to merely
> assume that Apple conducted tests that performed the method while
> the accused features were under development*.  Mirror Worlds did
> not present any evidence of testing.  General development alone is
> insufficient to prove that Apple performed the claimed steps.
> *Mirror Worlds' arguments that it is reasonable to infer that testing
> occurred during development of the accused features does not
> replace the evidence required to prove infringement.*
>
> \*       \*       \*
>
> [D]irect infringement of a method claim cannot be determined on
> speculation, assumptions, or inferences.  If it was inconceivable to
> Mirror Worlds that the accused features were not practiced by
> Apple, it should have had no difficulty in meeting its burden of proof
> and in introducing testimony of such use. . . . Mirror Worlds simply
> failed to present sufficient evidence from which a reasonable jury
> could find that Apple, or anyone else, practiced each and every step
> of the claimed methods by using the [accused features].

*Id.* at 713, 715.

In short, assuming that Samsung must have used or tested the Samsung Pay feature of the

Accused Devices in the United States falls short of the evidence necessary for the trier of fact to

conclude that Samsung has directly infringed any of the Asserted Patents.  Accordingly, the Court should grant summary judgment of no direct infringement of the Asserted Method Claims.

**G.     There Is Insufficient Evidence In The Record For The Trier Of Fact To Find That Samsung Has Induced Its Customers to Infringe the Asserted Claims**

As explained above, to establish a claim for induced infringement, a plaintiff must demonstrate "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *ACCO Brands*, 501 F.3d at 1312 (citation omitted).  In other words, "liability for induced infringement can only attach if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement.'" *Commil*, 135 S. Ct. at 1926 (quoting *Global-Tech Appliances*, 563 U.S. at 766); *see also id.* at 1928 (holding that a finding of induced infringement "requires proof the defendant knew the acts were infringing").

As an initial matter, the Accused Devices do not include an "e-purse" or a "fund stored in the emulator."  Accordingly, there can be no direct infringement of the '218, '855 and '787 patents.  Without a direct infringer, RFCyber's claim that Samsung has induced infringement of those patents must fail.  Furthermore, there is no evidence in the record that (i) the acts Samsung is allegedly inducing – namely, its customers' usage of Samsung Pay – constitutes infringement of the Asserted Patents or (ii) that Samsung possessed the requisite specific intent to encourage direct infringement.  Because Samsung had a good faith belief that the Accused Devices do not infringe (and could not be used to infringe) the Asserted Patents, Samsung could not have possessed the requisite specific intent to encourage any direct infringement and, at a minimum, Samsung has a good faith belief of non-infringement.[17]  And, "[u]nder our case law, it is clear that a good-faith

---

[17] In addition to the non-infringement arguments set forth in the instant motion, Samsung served the Expert Report on Non-infringement By Nenad Medvidovic, Ph.D. on November 24, 2021 which included many more non-infringement arguments with respect to the Asserted Patents.

belief of non-infringement is relevant evidence that tends to show that an accused inducer lacked the intent required to be held liable for induced infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367-68 (Fed. Cir. 2013), *aff'd in pertinent part*, 135 S. Ct. 1920 (2015); *see also DSU Med. Corp.*, 471 F.3d at 1307 (finding a demonstrated belief of non-infringement sufficient to support a jury verdict that the defendant did not induce infringement); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1351 (Fed. Cir. 2009), *amended on reh'g in part*, 366 Fed. Appx. 154 (Fed. Cir. 2009) (finding that a reasonable belief of non-infringement supported a jury verdict that the defendant lacked the intent required for induced infringement).  Furthermore, courts have granted motions for summary judgment of no induced infringement based upon such good faith beliefs of non-infringement.  *See, e.g., Mikkelsen Graphic Eng'g Inc. v. Zund Am., Inc.*, 2011 U.S. Dist. LEXIS 38270, at *35-37 (E.D. Wis. Apr. 7, 2011) (granting summary judgment of no induced infringement because the accused infringer "had a good-faith belief" that it did not infringe), *vacated on other grounds*, 541 F. App'x 964 (Fed. Cir. 2013).

For all of these reasons, the Court should grant summary judgment that Samsung has not induced infringement of the Asserted Patents.

## H.     There Is Insufficient Evidence In The Record For The Trier Of Fact To Find That Samsung Has Contributorily Infringed the Asserted Claims

As explained above, to establish contributory infringement, RFCyber must show: "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention."  *Fujitsu*, 620 F.3d at 1326.  Also, "[l]ike induced infringement, contributory infringement requires knowledge of the patent in suit *and knowledge of patent infringement*." *Commil*, 135 S. Ct. at 1926.

As an initial matter, the Accused Devices do not include an "e-purse" or a "fund stored in

the emulator." Accordingly, there can be no direct infringement of the '218, '855 and '787 patents. Without a direct infringer, RFCyber's claim that Samsung has contributorily infringed those patents must fail. Second, there is no evidence that Samsung knew that the Accused Devices are components designed for a combination that would infringe the Asserted Patents. To the contrary, they are not, as the Accused Devices lack at least one claim limitation of each Asserted Claim. Finally, the Accused Devices have substantial non-infringing uses. It cannot be disputed that the Accused Devices are smartphones and wearables that can be used for multiple purposes that do not involve the use of Samsung Pay. For example, the mobile phones and/or wearables can make calls, take photographs, use WiFi for Internet access, provide the time, provide health tracking, etc. In fact, courts frequently grant motions for summary judgment of no contributory infringement for the simple reason that the accused devices have substantial non-infringing uses. *See, e.g., Amarin Pharma, Inc. v. W. Ward Pharm. Int'l Ltd.*, 407 F. Supp. 3d 1103, 1112-13 (D. Nev. 2019) (granting summary judgment of no contributory infringement because there is no genuine dispute that the accused drugs have substantial non-infringing use); *Agri-Labs Holding LLC v. Taplogic, LLC*, 304 F. Supp. 3d 773, 800 (N.D. Ind. 2018) (granting summary judgment of no contributory infringement because "the instructions and on-screen prompts within the [accused] app" provides user with non-infringing use); *Blackbird Tech LLC v. ELB Elecs., Inc.*, 2020 U.S. Dist. LEXIS 163889, at *20-22 (D. Del. Sept. 9, 2020) (granting summary judgment of no contributory infringement because the accused lights "are apparently used in a non-infringing manner every day"). For all of these reasons, the Court should grant summary judgment that Samsung has not contributorily infringed any of the Asserted Patents.

## VIII.    CONCLUSION

For all of the foregoing reasons, Samsung respectfully requests that the Court grant its motion for summary judgment of non-infringement.

Dated: December 15, 2021

Respectfully submitted,

By:  *Allan A. Kassenoff*
Melissa R. Smith
Bar No. 24001351
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

Richard Edlin
Allan A. Kassenoff
Rose Cordero Prey
Jeffrey R. Colin
Vimal Kapadia
GREENBERG TRAURIG, LLP
MetLife Building, 200 Park Avenue
New York, NY 10002
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: edlinr@gtlaw.com
Email: kassenoffa@gtlaw.com
Email: raskinj@gtlaw.com
Email: bookbinderj@gtlaw.com

***Attorneys for Defendants Samsung
Electronics America, Inc. and
Samsung Electronics Co., Ltd.***

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on this December 15, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document by electronic mail under Local Rule CV-5(d).

*/s/ Melissa R. Smith*

32