**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| RFCYBER CORP., | § § § § | Case No. 2:20-cv-00274-JRG (LEAD CASE) |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | ███████████████ |
| GOOGLE LLC and GOOGLE PAYMENT CORP., | § § § | |
| Defendants. | § § § | |
| | § | |
| RFCYBER CORP., | § § | Case No. 2:20-cv-00335-JRG (MEMBER CASE) |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | ███████████████ |
| SAMSUNG ELECTRONICS CO. LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | § § § § | |
| Defendants. | § § | |

**PLAINTIFF RFCYBER CORP.'S RESPONSE IN OPPOSITION TO**
**SAMSUNG'S *DAUBERT* MOTION TO EXCLUDE CERTAIN**
**OPINIONS AND TESTIMONY OF**
**RFCYBER'S DAMAGES EXPERT STEPHEN E. DELL (DKT. 171)**

## <u>TABLE OF CONTENTS</u>

<b><u>Page(s)</u></b>

I.     INTRODUCTION ........................................................................................................... 1

II.    BACKGROUND .......................................................................................................... 2

    A.    Samsung's Infringement of the Patents-in-Suit ....................................................... 2

    B.    Mr. Dell's Opinions .......................................................................................... 3

III.    LEGAL STANDARDS ................................................................................................ 6

IV.    ARGUMENT ............................................................................................................. 7

    A.    Mr. Dell Properly Apportioned the RFCyber Agreements .................................... 7

    B.    Mr. Dell Properly Apportioned the Patented Features from the
            Unpatented Features in Samsung Pay ................................................................. 9

    C.    Mr. Dell's Use of Litigation Risk Factors Is Tied to the Facts of the Case
            and Reliable ..................................................................................................... 13

    D.    Samsung's Profits on the Accused Devices Are Relevant and Mr. Dell's
            Opinions Regarding Them Are Reliable ............................................................. 15

V.    CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds*, *Williamson v.
  Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc) ................................7

*AstraZeneca AB v. Apotex Corp.*,
  782 F.3d 1324 (Fed. Cir. 2015)...................................................................................11

*Avocent Redmond Corp. v. Rose Elecs.*,
  No. C06-1711RSL, 2013 WL 8844098 (W.D. Wash. Mar. 11, 2013) ...................14

*Carucel Invs., L.P. v. Novatel Wireless, Inc.*,
  No. 16-cv-118-H-KSC, 2017 WL 1215838 (S.D. Cal. Apr. 3, 2017) ....................14

*DataQuill Ltd. v. High Tech Comput. Corp.*,
  No. 08cv543-IEG (BGS), 2012 WL 1284381 (S.D. Cal. Apr. 16, 2012)............7, 8

*Daubert v. Merrell Dow Pharms., Inc.*
  509 US 579 (1993).........................................................................................................7

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
  No. 6:11-CV-201-JRG, 2017 WL 1322555 (E.D. Tex. Apr. 6, 2017) ...................11

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018)...................................................................................11

*Innovation Scis., LLC v. Amazon.com, Inc.*,
  No. 4:18-cv-474, 2020 WL 4201925 (E.D. Tex. Jul. 22, 2020).........................9, 11

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
  No. 2:15-cv-01366-JRG-RSP, 2021 WL 662237 (E.D. Tex. Feb. 20, 2021).........12

*Realtime Data LLC v. EchoStar Corp.*,
  No. 6:17-CV-00084-JDL, 2018 WL 6266301 (E.D. Tex. Nov. 15, 2018).............12

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010)......................................................................................13

*Sensonics, Inc. v. Aerosonic Corp.*,
  81 F.3d 1566 (Fed Cir. 1996)......................................................................................15

*St. Lawrence Commc'ns LLC v. ZTE Corp.*,
  No. 2:15-cv-349-JRG, 2017 WL 679623 (E.D. Tex. Feb. 21, 2017) .....................14

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283 (Fed. Cir. 2015)............................................................................................6, 7

*TWM Mfg. Co. v. Dura Corp.*,
    789 F.2d 895 (Fed. Cir. 1986)...............................................................................................13

## I.     INTRODUCTION

Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Samsung") seek to exclude the testimony of RFCyber's damages expert, Mr. Stephen Dell, not because of any methodological flaws or unreliability in his analysis, but because Samsung simply prefers a different approach and a different conclusion. The criticisms set forth in Samsung's motion (Dkt. 171, "Motion") lack merit and represent, at most, issues for cross-examination rather than grounds for exclusion.

Samsung's first complaint is that Mr. Dell did not properly apportion ███████████ . But Mr. Dell determined, based on RFCyber's contemporaneous documents, that RFCyber ██████ ███████████████████████████████████████████████████████ ███████████████ Mr. Dell applied that apportionment factor to the ██████████ royalty rate benchmarks he reviewed as part of his analysis. Samsung's disagreements with Mr. Dell's apportionment input are properly the subject the cross-examination.

Similarly, Samsung takes issue with Mr. Dell's apportionment of the value of Samsung Pay itself. But Samsung does not even identify any features of Samsung Pay that are not covered by the Asserted Patents. Nevertheless, Mr. Dell's analysis further apportioned the value of the Asserted Patents from Samsung Pay.

Samsung also complains that Mr. Dell used litigation statistics from this district and throughout the United States to account for the differences between the hypothetical license and RFCyber's ███████████████████ . Samsung's complaints, again, are with Mr. Dell's inputs and not his methodology. Such complaints can be addressed by cross-examination.

Finally, Samsung takes issue with Mr. Dell's description of SEC's revenue and financial information as presented in his expert report. Samsung mischaracterizes Mr. Dell's analysis and opinions with respect to SEC's revenue and profit information. To be clear, Mr. Dell does *not* rely

on SEC's overall revenues in determining his royalty rate. Thus, to reduce disputes before the Court, RFCyber will agree not to present SEC's overall worldwide revenue and profit numbers to the jury and this portion of Samsung's Motion is moot. During discovery, however, Samsung refused to provide SEC's revenue and profit information on the Accused Devices. Mr. Dell noted this failure in his report and determined Samsung's applicable profits on the Accused Devices by utilizing SEA's gross profit percentage on sales of Accused Devices as a proxy for Samsung's overall profit (for both SEC and SEA) on sales of Accused Devices. This was consistent with SEC's overall operating profit margin, as identified in Mr. Dell's report. The similarity between these figures demonstrated that Mr. Dell's use of SEA's gross profit margin percentage to measure the overall profitability of the Accused Devices was a reasonable proxy for Samsung's overall profit on the Accused Devices, which Mr. Dell then further apportioned to determine the value of the patented inventions.

## II.     BACKGROUND

### A.      Samsung's Infringement of the Patents-in-Suit

The Patents-in-Suit stem from RFCyber's pioneering work in mobile payments. (Ex. A ("Dell Report"), ¶¶ 36-51.) By 2006, RFCyber was focused on developing and marketing its "Mobile Payment and ePayment software solutions." (*Id.,* ¶ 40.) The Asserted Patents all claim priority to the same earliest application and are related to mobile payments. (*Id.,* ¶¶ 23-35.) Samsung infringes these patents by providing the Samsung Pay or Samsung Pay Cash services and by selling the Accused Products, which include smartphones and smart watches that run or contain Samsung Pay or Samsung Pay Cash. (*Id.,* ¶¶ 3-4, 23-35.)

Samsung Pay was launched in September 2015. (*Id.,* ¶ 59.) Apple Pay, a competing product that provides similar mobile payment services, had been launched in 2014. (*Id.,* ¶¶ 178-183.) It was well-known that Apple had negotiated arrangements where Apple would receive 0.15% of the

value of each transaction made through Apple Pay. (*Id.,* ¶ 62.) Samsung, despite knowing of Apple's revenue stream, decided to forego transaction fees because it "view[ed] Samsung Pay as an engine to drive sales of phones and other devices." (*Id.*) ███████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

Samsung attributed significant value to mobile payment technology. In February 2015, Samsung acquired LoopPay, Inc. ████████████. (*Id.,* ¶ 56.) LoopPay had developed MST technology, which allowed customers to make proximity/contactless purchases by emitting magnetic pulses. (*Id.*) ████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

## B.    Mr. Dell's Opinions

Mr. Dell calculated the reasonable royalty due to RFCyber for Samsung's infringement of the Patents-in-Suit. (*Id.,* ¶22.) To reach his conclusions, Mr. Dell provided a detailed analysis of numerous factors, including ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████ and

the direct incremental value Samsung receives from the Accused Samsung Pay and Samsung Pay Cash services in the Accused Devices. ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

  As of the time of Mr. Dell's report, RFCyber ██████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

  Mr. Dell also analyzed revenue RFCyber received or was expected to receive, based on its own implementations of the patented technology as part of its license agreements with third parties. (*Id.*, ¶¶ 201-17.) ██████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

Mr. Dell used <u>*all*</u> of these apportioned royalty rate indicators and benchmarks as inputs to his analysis of the hypothetical negotiation between RFCyber and Samsung. (*Id.*, ¶¶ 332-69.) Considering all the inputs,[1] as well as the parties' respective bargaining positions and additional business risks borne by Samsung, Mr. Dell determined that the parties would have ultimately agreed to ████████████████████████████████████████████████

████████████████████████████████████

## III.   LEGAL STANDARDS

"[E]stimating a reasonable royalty is not an exact science." *Summit 6, LLC v. Samsung Elecs. Co.,* 802 F.3d 1283, 1296 (Fed. Cir. 2015). As a result, there may be "a range of reasonable

---

[1] Summarized at ¶ 349 Figure 5, and ¶ 355 Figure 6. (Dell Report ¶¶ 349, 355.)

royalties, rather than a single value," and "there may be more than one reliable method for estimating a reasonable royalty." *Id.*

"That the gatekeeping role of the judge is limited to excluding testimony based on unreliable principles and methods is particularly essential in the context of patent damages . . . [Q]uestions regarding which facts are most relevant or reliable to calculating a reasonable royalty are 'for the jury.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014), *overruled on other grounds*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc). Ultimately, "[a] judge must be cautious not to overstep its gatekeeping role and weigh facts, evaluate the correctness of conclusions, impose its own preferred methodology, or judge credibility, including the credibility of one expert over another. These tasks are solely reserved for the fact finder" at trial. *Id.* at 1314. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.* 509 US 579, 596 (1993).

## IV.    ARGUMENT

### A.    Mr. Dell Properly Apportioned the RFCyber Agreements

Samsung argues that Mr. Dell's testimony should be excluded because he relied on ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████

Samsung first argues that a software license can never be used in a reasonable royalty analysis. (Motion at 8-9.) Samsung cites only one case in support: *DataQuill Ltd. v. High Tech Comput. Corp.*, No. 08cv543-IEG (BGS), 2012 WL 1284381 (S.D. Cal. Apr. 16, 2012). But that case did not hold that an expert could never use a software license in a reasonable royalty analysis;

it merely stated that a particular revenue-sharing agreement between the accused infringer and a third party, where that agreement *had no relation to the patents in the case*, was too different from the hypothetical license to provide a rate. *Id.* at *7.[2] Samsung does not provide any discussion or analysis ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████

Samsung next argues that Mr. Dell "ignored" the difference ████████████████

███████████ the hypothetical license. (Motion at 9.) Samsung is simply wrong. Mr. Dell's report explains that the ████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████

Samsung next complains about Mr. Dell's apportionment of ████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

---

[2] Indeed, the court specifically noted that the agreement at issue may have been relevant to *Georgia-Pacific* factor 12—the same factor for which Mr. Dell analyzes many of RFCyber's agreements. (Ex. A, ¶¶ 200-17.)

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ Samsung's disagreement with Mr. Dell's apportionment is not a basis for exclusion; it is, at most, the subject of cross-examination. *E.g.*, *Innovation Scis., LLC v. Amazon.com, Inc.*, No. 4:18-cv-474, 2020 WL 4201925, at *2-3 (E.D. Tex. Jul. 22, 2020) (denying motion to exclude damages expert based on apportionment because "[Defendants'] challenges go to the weight of Dr. Magee's testimony, not the admissibility of Dr. Magee's testimony").

Finally, Samsung misconstrues (or mischaracterizes) Mr. Dell's deposition testimony as

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

**B.      Mr. Dell Properly Apportioned the Patented Features from the Unpatented Features in Samsung Pay**

Mr. Dell properly apportioned the value of the Asserted Patents' contribution to Samsung

Pay. To assess ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

In any event, as Mr. Dell explained, the Asserted Patents ████████████████████████

████████████████████████████████████████████████████

---

[3] Samsung does not argue that Mr. Dell used the entire market value of the Accused Products.



And a patent damages analysis is not required to apportion out all old technologies from a patented combination that includes them. *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015) ("It is not the case that the value of all conventional elements must be subtracted from the value of the patented invention as a whole when assessing damages.").

Samsung's cited cases do not hold otherwise. For example, in *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-201-JRG, 2017 WL 1322555 (E.D. Tex. Apr. 6, 2017), the Court excluded a damages expert from relying on the entire market value of the Accused LCD Panel when the claims were indisputably directed toward making a TFT array—only a component of an LCD Panel. *Id.* at *5. Similarly, *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018) dealt with a product with multiple non-infringing uses. Here, Mr. Dell apportioned the value of the Accused Devices to the value of the actual infringing feature/functionality. Samsung merely wishes for Mr. Dell to apportion his apportionment even further.

In sum, Samsung's complaints regarding Mr. Dell's apportionment analysis are mere disagreements that are best addressed through cross-examination. *E.g.*, *Innovation Scis., LLC*, 2020 WL 4201925, at *2-3 (denying motion to exclude expert based on apportionment because

"[Defendants'] challenges go to the weight of Dr. Magee's testimony, not the admissibility of Dr. Magee's testimony"); *Realtime Data LLC v. EchoStar Corp.*, No. 6:17-CV-00084-JDL, 2018 WL 6266301, at *8 (E.D. Tex. Nov. 15, 2018) ("Defendants' criticisms regarding Mr. Dell's inclusion of unpatented features largely go to the credibility of his opinion, rather than its admissibility.").

Samsung also argues that "dozens of Samsung's own patents [] underlie the Samsung Pay technology" and that Mr. Dell should have attributed value to those patents. (Motion at 12.) But Samsung does not provide *any* evidence that *any* Samsung patent covers Samsung Pay. (*See id.*) Indeed, ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ Samsung cannot fault Mr. Dell for not apportioning Samsung Pay's value among unidentified Samsung patents. *See Personalized Media Commc'ns, LLC v. Apple, Inc.*, No. 2:15-cv-01366-JRG-RSP, 2021 WL 662237, at *6-7 (E.D. Tex. Feb. 20, 2021) (striking portion of accused infringer's damages report because "[s]imply owning a patent does not mean that it is being practiced in a particular product. It cannot be assumed any one patent is being practiced without a more thorough investigation/analysis—much less fifty patents."). Nevertheless, to ██████████████████████████████████████████

████████████████████████████████████████████████████████

████ ████████ █████ █ ██████ █████ ███████ █████████ ████ █

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

12

**C.     Mr. Dell's Use of Litigation Risk Factors Is Tied to the Facts of the Case and Reliable**

As discussed previously, additional inputs to Mr. Dell's extensive reasonable royalty analysis included Mr. Dell's consideration of ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████ *See, e.g., ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) ("[A] reasonable royalty may permissibly reflect the fact that an infringer had to be ordered by a court to pay damages, rather than agreeing to a reasonable royalty.") (internal quotes omitted); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 900 (Fed. Cir. 1986) ("That [the patentee] might have agreed to a lesser royalty is of little relevance, for to look only at that question would be to pretend that the infringement never happened.").[4]

Samsung complains that Mr. Dell's use of these statistics is untethered to the facts of the

---

[4] Notably, Samsung's own damages expert acknowledges within his expert report that such an adjustment would be warranted (although he does not offer up any alternative metrics for such an adjustment). (Ex. F, Vigil Report, ¶ 57.)

case. (Motion at 12-13.) However, 

*St. Lawrence Commc'ns LLC v. ZTE Corp.*, No. 2:15-cv-349-JRG, 2017 WL 679623, at *2 (E.D. Tex. Feb. 21, 2017) (denying motion to exclude damages opinions that adjusted for litigation risks because "the sources Mr. Weinstein uses to justify these inputs is transparent" and is therefore properly addressed by cross-examination). Accordingly, Mr. Dell's use of these statistics is tied to the facts of this case and is reliable. *Id.* ("In principle, experts may increase royalty rates derived from prior licenses to account for discounts attributable to litigation risks and costs. Motorola's disagreement primarily lies not with Mr. Weinstein's methodology but with the inputs Mr. Weinstein uses.").

Samsung's cited cases present different facts. In *Carucel Invs., L.P. v. Novatel Wireless, Inc.*, No. 16-cv-118-H-KSC, 2017 WL 1215838 (S.D. Cal. Apr. 3, 2017), the court excluded reliance on the 2014 PWC Litigation Report to act as an "upward adjustment of the royalty rate." *Id.* at *21. Similarly, in *Avocent Redmond Corp. v. Rose Elecs.*, No. C06-1711RSL, 2013 WL 8844098 (W.D. Wash. Mar. 11, 2013), the expert "mentions some of these factors, then simply multiplies the Raritan royalty rate by three." *Id.* at *4. Both cases present far different scenarios then here, where ██████████████████████████████████████████████████████████████████████████████████.

Accordingly, Mr. Dell's opinions regarding litigation risk factors are reliable and the Court should not exclude them. At most, they are properly the subject of cross-examination. *St. Lawrence*

*Commc'ns*, 2017 WL 679623 at *2.

> **D.  Samsung's Profits on the Accused Devices Are Relevant and Mr. Dell's Opinions Regarding Them Are Reliable**

As discussed above, Mr. Dell's report only mentions SEC's overall revenue in the "background" section. (Ex. A, ¶¶ 53-55.) RFCyber agrees that it will not present Samsung's worldwide revenue to the jury. Accordingly, this portion of Samsung's Motion is moot.

However, Mr. Dell's analysis and use of Samsung's profit due to the Accused Devices is reliable and relevant. During discovery, Samsung █████████████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████. (Ex. B, 263:11-265:19, 279:4-280:10; Ex. A, ¶¶ 248-49.) Samsung's commercial success and profitability of the Accused Devices is relevant to Factors 8 and 11 and is a reliable use of the profit information. *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed Cir. 1996) ("[I]f actual damages can not be ascertained with precision because the evidence available from the infringer is inadequate, damages may be estimated on the best available evidence, taking cognizance of the reason for the inadequacy of proof and resolving doubt against the infringer.").

## V.  CONCLUSION

For the reasons stated above, the Court should deny Samsung's Motion in its entirety.

Dated:  December 29, 2021              Respectfully submitted,

                                       /s/ *Vincent J. Rubino, III*
                                       Alfred R. Fabricant
                                       NY Bar No. 2219392
                                       Email: ffabricant@fabricantllp.com
                                       Peter Lambrianakos
                                       NY Bar No. 2894392
                                       Email: plambrianakos@fabricantllp.com
                                       Vincent J. Rubino, III

NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York  10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
State Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
State Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR PLAINTIFF
RFCYBER CORP.***

16



## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2021, a true and correct copy of the above and foregoing document has been served by email on all counsel of record.

/s/ Vincent J. Rubino, III
Vincent J. Rubino, III